## MASTER CONFIDENTIALITY AGREEMENT

This Master Confidentiality Agreement (the "Agreement") is made and entered into effective March 6, 2017 by and between the law firm of Rubin & Rubin, P.A., by and on behalf of its clients("Rubin") and Somera Road Inc. ("Somera").  Rubin and Somera may each disclose information to the other regarding certain transactions, including without limitation, transactions involving commercial real estate and loans secured by commercial real estate (each transaction, a "Proposed Transaction"), as identified on a Schedule (as defined below), provided any such disclosed information shall be deemed to be and treated as Confidential Information (as defined below).  Because this Agreement contemplates that either party may disclose Confidential Information to the other party, the disclosing party is hereinafter referred to as the "Provider" and the receiving party is referred to as the "Recipient."  It is hereby agreed that the documentation and content of any such disclosures are proprietary and confidential to Provider, and that the disclosure of the Confidential Information shall be governed by this Agreement.

NOW, THEREFORE, for good and valuable consideration, the parties mutually agree as follows:

1.  (i) "Confidential Information" shall include, but is not limited to, all documents, financial statements, reports, forecasts, projections, surveys, diagrams, records, engineering reports and all other written or oral information, as well as diskettes and other forms of electronically transmitted data, furnished or made available to Recipient or Recipient's employees, trustees, members, partners, subsidiaries, agents, advisors, shareholders, counsel, financing sources, or representatives or any affiliate of any of the foregoing (collectively, its "Representatives") by or on behalf of Provider relating to any Proposed Transaction, as well as any written memoranda, notes, analyses, reports, compilations, or studies prepared by Recipient or any Representative (in whatever form or medium) that contain, or are derived from, such documents or other information furnished or made available by or on behalf of Provider.  Notwithstanding the foregoing, the term "Confidential Information" shall not include information furnished or made available by or on behalf of Provider if such information (a) is or becomes generally available to the public, other than as a result of a disclosure by or through Recipient or its Representatives in violation of this Agreement; (b) is or becomes available to Recipient from a source (other than Provider or its respective Representatives) not bound, to the best knowledge of Recipient or its Representatives, by any legal, contractual or other obligation to Provider prohibiting or limiting the disclosure of such Confidential Information; (c) has been or is independently developed by Recipient or its Representatives without reference to any Confidential Information; or (d) is required to be disclosed by Applicable Law (as defined below).

(ii) "Schedule" means a schedule substantially in the form of **Exhibit A** attached hereto that is executed and delivered by the parties in accordance with Paragraph 2.

2.  For each Proposed Transaction, Provider shall deliver to Recipient a Schedule which shall include details describing the loan or other investment with respect to which the Confidential Information relates.   Provider's disclosure to Recipient of any Confidential Information relating to each Proposed Transaction is conditioned on Recipient executing and returning such Schedule to Provider.

3.  Recipient agrees that neither it nor any of its Representatives shall disclose Confidential Information to any person or entity except as expressly permitted by this Agreement, however Recipient may disclose Confidential Information to any of its Representatives who needs to know such Confidential Information for the purpose of evaluating the Proposed Transaction and providing advice in connection therewith; provided that Recipient (a) shall inform each such Representative of the confidential nature of the Confidential Information and the restrictive terms of this Agreement and direct such Representative to abide by the terms hereof and (b) hereby agrees to be liable subject to and in accordance with the terms hereof in the event that any such Representative discloses Confidential Information in breach of the permitted methods of disclosure under this Agreement.  Recipient further

**Exhibit F**

agrees that it and each of its Representatives will use the Confidential Information exclusively for the purpose of evaluating the Proposed Transaction, and shall not use the Confidential Information (a) for its own benefit, (b) for the benefit of any third party, or (c) to Provider's detriment.  Additionally, Recipient will take reasonable precautions in accordance with procedures it follows with respect to its own important confidential information to prevent damage to or misappropriation or disclosure, directly or indirectly, of all or any portion of the Confidential Information.

       4. Notwithstanding the provisions of Paragraph 3 hereof, Recipient or its Representatives may without liability hereunder disclose Confidential Information to the extent required or requested pursuant to Applicable Law, provided that Recipient (a) provides Provider with prompt notice thereof (to the extent legally permitted), and (b) discloses only that portion of Confidential Information that Recipient is required or requested to disclose.  For the purposes of this Agreement, "Applicable Law" means (a) any applicable present or future law, rule, order, ordinance regulation, statute, requirement, code, and/or executive or judicial order of any governmental authority or any requirement of a stock exchange or rating agency or (b) any matters related to any legal or regulatory proceeding or criminal or civil investigation.

       5. Upon Provider's written request, Recipient agrees that all written Confidential Information and all copies thereof, as well as analyses, compilations, studies or other documents prepared by or for Recipient (to the extent the same contain Confidential Information), will (to the extent technically practicable) be returned to Provider promptly or be destroyed.  Notwithstanding such return or destruction, Recipient and its Representatives may retain copies of the Confidential Information for legal and/or compliance purposes, provided that the obligations under this Agreement shall continue in full force and effect, subject to the terms hereof.

       6. Recipient acknowledges that significant portions of Confidential Information are proprietary in nature and that Provider may suffer significant and irreparable harm in the event of the misuse or disclosure of Confidential Information.  Without affecting any other rights or remedies that Provider may have at law or in equity, Recipient acknowledges and agrees that Provider will be entitled to seek the remedies of injunction, specific performance and other equitable relief for any breach, threatened breach or anticipatory breach of the provisions of this Agreement by Recipient.  Recipient agrees to indemnify and hold Provider (as well as its officers, directors, partners, employees and/or agents) harmless from any damages, including reasonable out of pocket legal fees and expenses, that are incurred to the extent resulting from  any breach of this Agreement.

       7. Each party agrees that unless and until a definitive agreement between them with respect to the Proposed Transaction has been executed and delivered, neither party will be under any legal obligation of any kind with respect to such Proposed Transaction, except for the matters specifically agreed to in this Agreement, and each party reserves the right to terminate discussions regarding any Proposed Transaction at any time.  All expenses, costs, liabilities, obligations or losses incurred by either party pursuant to this Agreement (other than the indemnification costs identified in Paragraph 6) and the discussions and related effort regarding the Proposed Transaction shall be borne by the party incurring such charges.

       8. For a period of eighteen (18) months from the date of the applicable Schedule (unless provided otherwise in the applicable Schedule), Recipient agrees that it will not, directly or indirectly, without Provider's prior written consent, (a) enter into any oral or written agreement or arrangement of any kind for or in connection with a Proposed Transaction, (b) initiate maintain or respond to any contact with the owner of the underlying property or any note secured thereby the underlying property relating to the Proposed Transaction, any obligor or borrower related to the Proposed Transaction, or any of the respective employees or representatives of the foregoing (except in the ordinary course of business unrelated to the Proposed Transaction), or (c) otherwise circumvent or undermine the Provider's opportunity with respect to the Proposed Transaction.  Recipient will instruct its Representatives to similarly restrain themselves and act accordingly under this Section 8.

9. Nothing contained in this Agreement or in any discussion or disclosures made pursuant hereto shall: (a) be deemed a commitment to engage in any business relationship, contract or future dealing with the other party; (b) be deemed a license or create any other rights in either party to the Confidential Information of the other party; (c) limit or restrict either party's right to conduct their business; or (d) limit either party's right to conduct similar discussions or perform similar work to that undertaken pursuant hereto, so long as said discussion or work does not violate this Agreement.

10. This Agreement, and all restrictions contained therein, shall expire upon the earlier of (a) the execution of a definitive agreement with respect to the Proposed Transaction or (b) the date that is eighteen (18) months from the date of the applicable Schedule.

11. Signatures to this Agreement may be transmitted by facsimile or by scan and in counterparts, each of which shall be deemed to an original, and both of which, taken together, shall constitute one agreement binding on both parties. If any provision of this Agreement is declared void, such provision will be deemed severed from this Agreement, which otherwise will remain in full force and effect.

12. No failure on the part of either party to exercise, and no delay in exercising, any right under this Agreement will operate as a waiver hereof by either party, nor will any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The rights and remedies of the parties hereto provided in this Agreement (a) are cumulative and are in addition to, and are not exclusive of, any rights or remedies provided by law (except as otherwise expressly set forth in this Agreement) and (b) are not conditional or contingent on any attempt by Provider to exercise any rights under any other related documents.

13. This Agreement and all matters arising out of or relating to this Agreement shall be governed by and construed in accordance with the laws of New York, without giving effect to the principles of conflict of laws that would require or permit the application of the laws of any other jurisdiction. The parties agree to submit to the jurisdiction of the state and federal courts located in New York County, New York. Each party waives any right to a trial by jury of any dispute arising under this Agreement.

[The next page is the signature page.]

Please indicate your agreement by signing below.

**RUBIN & RUBIN, P.A.**

By: _____
    Name:
    Title:

**SOMERA ROAD INC.**

By: _____
    Name:  Ian Ross
    Title:  Principal