## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NNN 400 CAPITOL CENTER 16, LLC, *et al.*,[1] | Case No. 16-12728 (JTD) (Jointly Administered) |
| Debtors. | |
| NNN 400 CAPITOL CENTER, LLC, *et al.*, | |
| Plaintiffs, | |
| v. | Adv. No. 18-50384-JTD |
| WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF COMM 2006-C8 COMMERCIAL MORTGAGE PASSTHROUGH CERTIFICATES; *et al.*, | **Related to Adv. D.I. 435** |
| Defendants. | |

## <u>OPENING BRIEF IN SUPPORT OF LENDER DEFENDANTS' MOTION TO STRIKE AND/OR EXCLUDE GARY M. TENZER'S OPINIONS</u>

---

[1] The debtors in these cases are: NNN 400 Capitol Center, LLC, Case No. 17-11250 (JTD); NNN 400 Capitol Center 1, LLC, Case No. 17-11251 (JTD); NNN 400 Capitol Center 2, LLC, Case No. 16-12741 (JTD); NNN 400 Capitol Center 3, LLC, Case No. 16-12750 (JTD); NNN 400 Capitol Center 4, LLC, Case No. 16-12752 (JTD); NNN 400 Capitol Center 5, LLC, Case No. 16-12753 (JTD); NNN 400 Capitol Center 6, LLC, Case No. 16-12754 (JTD); NNN 400 Capitol Center 7, LLC, Case No. 17-11253 (JTD); NNN 400 Capitol Center 8, LLC, Case No. 17-11254 (JTD); NNN 400 Capitol Center 9, LLC, Case No. 16-12755 (JTD); NNN 400 Capitol Center 10, LLC, Case No. 16-12730 (JTD); NNN 400 Capitol Center 11, LLC, Case No. 16-12731 (JTD); NNN 400 Capitol Center 12, LLC, Case No. 16-12732 (JTD); NNN 400 Capitol Center 13, LLC, Case No. 16-12733 (JTD); NNN 400 Capitol Center 14, LLC, Case No. 16-12735 (JTD); NNN 400 Capitol Center 15, LLC, Case No. 16-12736 (JTD); NNN 400 Capitol Center 16, LLC, Case No. 16-12728 (JTD); NNN 400 Capitol Center 17, LLC, Case No. 16-12737 (JTD); NNN 400 Capitol Center 18, LLC, Case No. 16-12738 (JTD); NNN 400 Capitol Center 19, LLC, Case No. 16-12739 (JTD); NNN 400 Capitol Center 20, LLC, Case No. 16-12742 (JTD); NNN 400 Capitol Center 21, LLC, Case No. 16-12743 (JTD); NNN 400 Capitol Center 22, LLC, Case No. 16-12744 (JTD); NNN 400 Capitol Center 24, LLC, Case No. 16-12746 (JTD); NNN 400 Capitol Center 25, LLC, Case No. 17-11258 (JTD); NNN 400 Capitol Center 26, LLC, Case No. 16-12747 (JTD); NNN 400 Capitol Center 27, LLC, Case No. 16-12748 (JTD); NNN 400 Capitol Center 28, LLC, Case No. 16-12749 (JTD); NNN 400 Capitol Center 30, LLC, Case No. 17-11255 (JTD); NNN 400 Capitol Center 32, LLC, Case No. 16-12751 (JTD); NNN 400 Capitol Center 35, LLC, Case No. 17-11256 (JTD); and NNN 400 Capitol Center 36, LLC, Case No. 17-11257 (JTD).

# TABLE OF CONTENTS

**Page**

Table of Authorities ........................................................................................................ iii

I.     SUMMARY OF BASES TO STRIKE AND/OR EXCLUDE
       TENZER'S OPINIONS ................................................................................1

II.    OVERVIEW OF THE RELEVANT FACTS ...........................................................2

       A.     Plaintiffs' Claims Against Lender Defendants. ...........................................2

       B.     Overview Of Tenzer's Written Opinions And Deposition. ..........................2

       C.     Detailed Description Of The Four Opinions Contained
              In Tenzer's Original Declaration. ..................................................4

       D.     Detailed Description Of The Three Opinions Contained
              In Tenzer's Addendum Declaration. ..............................................6

III.   APPLICABLE LEGAL STANDARDS ...................................................8

IV.    CERTAIN OF TENZER'S OPINIONS ARE UNTIMELY
       AND SHOULD THEREFORE BE STRICKEN (SECTIONS II.1(A)-(C), 2,
       AND 3 OF THE ADDENDUM DECLARATION) ...............................................9

V.     CERTAIN OF TENZER'S OPINIONS ARE IRRELEVANT
       AND SHOULD THEREFORE BE STRICKEN AND/OR EXCLUDED
       (SECTIONS I.1(D)-(H) OF THE ADDENDUM DECLARATION) ..................10

VI.    TENZER'S OPINIONS CONCERNING LNR'S AND BERKADIA'S
       ALLEGED MISCONDUCT DO NOT SATISFY ANY OF THE
       DAUBERT STANDARDS (SECTION II.1 OF THE ORIGINAL
       DECLARATION AND SECTIONS II.1 AND II.3 OF THE
       ADDENDUM DECLARATION) .......................................................10

       A.     Tenzer's Opinions About Berkadia's And LNR's Alleged
              Misconduct Are Not Based On Any Specialized Knowledge,
              Skill, Experience, Training, Or Education. ..............................................11

              1.     Tenzer's Subjective Conclusions Are Not Expert Opinions ..........11

              2.     No Expert Testimony Is Needed To Read And Understand
                     Plain Contract Terms And Other Evidence. .................................11

       B.     Tenzer's Loan Claim Opinions Are Not Based On Any Principle
              Or Method And Are Therefore Unreliable. ..............................................12

i

**Page**

C.    Tenzer's Loan Claim Opinions Are Not Based On Sufficient Facts
And Are Therefore Unreliable. ...................................................................13

D.    Tenzer's Loan Claim Opinions Do Not Satisfy *Daubert* Because
The Opinions Are Improper Legal Conclusions Which Tenzer Is Not
Qualified To Give. ......................................................................................15

VII.    TENZER'S DECLARATORY JUDGMENT CLAIM OPINION
DOES NOT MEET ANY OF THE DAUBERT STANDARDS AND
SHOULD THEREFORE BE STRICKEN AND/OR EXCLUDED
(SECTION II.2 OF THE ORIGINAL DECLARATION)....................................16

A.    Tenzer's Declaratory Judgment Claim Opinion Is An
Improper Legal Conclusion. ......................................................................17

B.    Tenzer's Declaratory Judgment Claim Opinion Is Not Based
On Any Specialized Knowledge, Skill, Experience, Training,
Or Education That Will Assist The Court In Resolving The
Declaratory Judgment Claim. ....................................................................17

C.    Tenzer's Declaratory Judgment Claim Opinion Is Not Based
On Any Principle Or Method And Is Therefore Unreliable. ....................18

VIII.    TENZER'S CONFIDENTIALITY AGREEMENT CLAIM OPINIONS
DO NOT SATISFY ANY OF THE DAUBERT STANDARDS AND
SHOULD THEREFORE BE STRICKEN AND/OR EXCLUDED
(SECTIONS II.3 AND II.4 OF THE ORIGINAL DECLARATION
AND SECTION II.2 OF THE ADDENDUM DECLARATION) ........................18

IX.    CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Advo, Inc. v. Philadelphia Newspapers, Inc.*,
   51 F.3d 1191 (3d Cir. 1995)................................................................................14

*Akeva L.L.C. v. Mizuno Corp.*,
   212 F.R.D. 306 (M.D.N.C 2002) ....................................................................9

*Aloe Coal Co. v. Clark Equip. Co.*,
   816 F.2d 110 (3d Cir. 1987)......................................................................11, 18

*Berckeley Inv. Group, Ltd. v. Colkitt*,
   455 F.3d 195 (3d Cir. 2006)......................................................................15, 17

*BH Sutton Mezz LLC v. Sutton 58 Associates LLC (In re BH Sutton Mezz LLC)*,
   Adv. No. 16-01187-SHL, D.I. 58 (Bankr. S.D.N.Y. Dec. 1, 2016).............................5

*Cecala v. Newman*,
   532 F. Supp. 2d 1118 (D. Ariz. 2007) .............................................................9

*Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*,
   350 F. Supp. 2d 582 (D. Del. 2004)................................................................12

*Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*,
   430 F. Supp. 2d 346 (D. Del. 2006).......................................................... 8, 12, 16-17

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)................................................................................... *passim*

*Dominguez on Behalf of Himself v. Yahoo, Inc.*,
   894 F.3d 116 (3d Cir. 2018)........................................................................10

*Dow Chem. Canada Inc. v. HRD Corp.*,
   656 F. Supp. 2d 427 (D. Del. 2009),
   *aff'd*, 587 F. App'x 741 (3d Cir. 2014).............................................................15, 17

*Elcock v. Kmart Corp.*,
   233 F.3d 734 (3d Cir. 2000).......................................................................8, 11

*Flickinger v. Toys R Us-Delaware, Inc.*,
   492 F. App'x 217 (3d Cir. 2012) ...................................................................16

*Furlan v. Schindler Elevator Corp.*,
   516 F. App'x 201 (3d Cir. 2013) ..............................................................13, 19

*Hayes v. First Nat'l Bank of Memphis*,
   507 S.W.2d 701 (Ark. 1974)......................................................................17, 19

**Page(s)**

*Heller v. Shaw Indus., Inc.*,
    167 F.3d 146 (3d Cir. 1999)......................................................................12

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir. 1994).......................................................................11

*In re TMI Litig.*,
    193 F.3d 613 (3d Cir. 1999)..................................................................8, 15

*Izumi Prods. Co. v. Koninklijke Philips Elecs. N.V.*,
    315 F. Supp. 2d 589 (D. Del. 2004),
      *aff'd*, 140 F. App'x 236 (Fed. Cir. 2005)..............................................15

*Kannankeril v. Terminix Int'l, Inc.*,
    128 F.3d 802 (3d Cir. 1997).......................................................................8

*Laverdi v. Jenkins Twp.*,
    49 F. App'x 362 (3d Cir. 2002) ...............................................................11

*Leonard v. Stemtech Health Scis., Inc.*,
    981 F. Supp. 2d 273 (D. Del. 2013).....................................................10, 15

*Lightning Lube, Inc. v. Witco Corp.*,
    4 F.3d 1153 (3d Cir. 1993).......................................................................14

*Montgomery Cty. v. Microvote Corp.*,
    320 F.3d 440 (3d Cir. 2003).....................................................................14

*Oddi v. Ford Motor Co.*,
    234 F.3d 136 (3d Cir. 2000)............................................................. *passim*

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
    345 F. Supp. 2d 431 (D. Del. 2004).........................................................16

*Patrick v. Moorman*,
    536 F. App'x 255 (3d Cir. 2013) .............................................................15

*Pell v. E.I. DuPont De Nemours & Co.*,
    231 F.R.D. 186 (D. Del. 2005) ..........................................................11-12

*S.E.C. v. Lipson*,
    46 F. Supp. 2d 758 (N.D. Ill. 1998) ...................................................12, 20

*State Farm Fire & Cas. Co. v. Holmes Prods.*,
    165 F. App'x 182 (3d Cir. 2006) .............................................................13

iv

**Page(s)**

*Stecyk v. Bell Helicopter Textron, Inc.*,
   295 F.3d 408 (3d Cir. 2002)......................................................................................14

*Transportes Aereos Pegaso, S.A. de C.V. v. Bell Helicopter Textron Inc.*,
   623 F. Supp. 2d 518 (D. Del. 2009).................................................................. 16-17

*Trilogy Communications, Inc. v. Times Fiber Communications, Inc.*,
   109 F.3d 739 (Fed. Cir. 1997)......................................................................................9

*Tse v. Ventana Med. Sys., Inc.*,
   123 F. Supp. 2d 213 (D. Del. 2000),
   *aff'd*, 297 F.3d 210 (3d Cir. 2002) ...........................................................................14

*Williams v. U.S.*,
   321 F. App'x 129 (3d Cir. 2009) .......................................................................... 12-13

**Statutes and Other Authorities**

Fed. R. Evid. 104(a).......................................................................................................8

Fed. R. Evid. 702 ..........................................................................................................8

Fed. R. Evid. 702(a).......................................................................................................1

Fed. R. Evid. 702(c)-(d)...................................................................................1, 12, 18

## I.    <u>SUMMARY OF BASES TO STRIKE AND/OR EXCLUDE TENZER'S OPINIONS</u>

All of Tenzer's[2] purported expert opinions relating to Lender Defendants[3] (*i.e.*, Tenzer's entire Original Declaration and Sections II.1-3 of his Addendum Declaration) should be stricken and/or excluded.  Specifically, and as detailed herein:

- Tenzer's opinions do not satisfy *Daubert* because, among other defects, his opinions do not rely on specialized knowledge, skill, experience, training, or education.  FED. R. EVID. 702(a) ("*Rule 702*") (allowing expert testimony when the "expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue").  Instead, Tenzer's supposed "expert" opinions are based on him: (i) reviewing a limited subset of discovery materials and drawing simple inferences based on those materials; and/or (ii) making legal conclusions.  This Court is capable of making legal conclusions, and reading and understanding discovery materials, on its own and without Tenzer's supposedly specialized knowledge or "expertise."  (*See infra* Sections VI-VIII.)

- Tenzer's opinions do not satisfy *Daubert* because, among other defects, his opinions are not based on actual facts, much less sufficient facts or data.  *Id*. at 702(b) (allowing expert testimony when "based on sufficient facts or data").  For example, Tenzer bases his opinions on the alleged fact that Plaintiffs could have closed a loan on September 30, 2106 and/or October 11, 2016 but for Lender Defendants' supposed misconduct.  But the actual and undisputed facts conclusively prove that no loan closing was possible on either date.  An expert's opinions are not reliable as required by *Daubert* where they are directly contradicted by the undisputed record in the case.  (*See infra* Section VI-VIII.)

- Tenzer's opinions do not satisfy *Daubert* because, among other defects, his opinions are not based on reliable principles or methods, much less a reliable application of principles and methods to the facts of this case.  *Id*. at 702(c)-(d) (allowing expert testimony when it is "the product of reliable principles and methods" and the expert has "reliably applied the principles and methods to the facts of the case").  Indeed, Tenzer conceded the same under oath and also that his opinions are based on nothing more than his conversations with Plaintiffs' attorneys and his "belief" that he correctly interpreted the facts (he did not, as detailed herein and in Lender Defendants' summary judgment motion).  (*See infra* Section VI-VIII.)

---

[2] Capitalized terms shall have the meaning ascribed to them in this brief, Tenzer's reports or, where not defined in either, as defined in the Motion.  All Exhibits referenced in this brief are contained in the Appendix filed contemporaneously herewith.

[3] Tenzer also opines on various issues specifically in rebuttal to Somera Road, Inc.'s ("*Somera*") expert opinion.  (Ex. 2 at II.4.)  Those Tenzer rebuttal opinions are not addressed in this Motion.

- Certain of Tenzer's opinions are untimely and therefore should be stricken and/or excluded in their entirety for this separate and independent reason.  (*See infra* Section IV.)

- Certain of Tenzer's opinions are irrelevant to the matters at issue and therefore should be stricken and/or excluded in their entirety for this separate and independent reason. (*See infra* Section V.)

For these and the other reasons detailed herein, Lender Defendants request that the Court grant their Motion and strike and/or exclude the entire Original Declaration and Sections II.1-3 of the Addendum Declaration (and any purported oral opinions based on those portions of Tenzer's declarations).

## II.    <u>OVERVIEW OF THE RELEVANT FACTS</u>

### A.    **Plaintiffs' Claims Against Lender Defendants.**

Plaintiffs' operative complaint (their second amended complaint) asserts eight causes of action against the Lender Defendants.  (D.I. 268.)  These eight causes of action, in turn, comprise three basic theories of liability: (i) Counts I, II, III, IV, VII, and IX (*i.e.*, six of the eight claims) allege that Lender Defendants thwarted Plaintiffs' efforts to refinance their defaulted $32 million commercial real estate loan on the specific closing date of Friday September 30, 2016 (D.I. 268 ¶¶ 52–55, 77-102, 118-19, 127-32 ("*Loan Claims*")); (ii) Count V seeks a declaratory judgment relating to Secured Lender's right to enforce a Late Payment Fee under the loan that is at issue (*id*. ¶¶ 103-08 ("*Declaratory Judgment Claim*")); and (iii) Count VIII alleges that Taconic breached a confidentiality agreement.  (*id*. ¶¶ 120-26 ("*Confidentiality Agreement Claim*").)

### B.    **Overview Of Tenzer's Written Opinions And Deposition.**

Tenzer submitted two separate written reports in this case.  Both reports are in the form of a "Declaration" and are sworn to by Tenzer under penalty of perjury.  (Exs. 1 and 2.)  The first declaration is dated November 12, 2019, Ex. 1 (the "*Original Declaration*"), and the second

2

declaration is dated November 24, 2019, Ex. 2 (the "*Addendum Declaration*").

In addition to his two sworn declarations, Tenzer was deposed on November 27 and November 29, 2019.  Among other things, Tenzer reaffirmed during his deposition that his two reports (*i.e.*, declarations) comprise the entirety of his opinions.[4]  (Transcript of the Deposition of Gary Tenzer taken November 27, 2019, Ex. 3 hereto at 211:21-212:02.)

Although Tenzer's two declarations purport to contain his "opinions," the reports mostly contain detailed recitations of various supposed "facts" that Tenzer apparently believes to be true. (Ex. 3 at 120, 121:12-16 (noting his observations in his original report concerning LNR and Berkadia's conduct noted on pages 4-5 simply recite alleged delays by the Lender Defendants).)

Tenzer also asserts that his approximately forty years in the California commercial lending space permits him to make sweeping opinions and generalizations concerning Plaintiffs' claims – including legal matters such as proximate cause, contract interpretation, and Arkansas common law – often for no reason other than "I just believe it."  (Ex. 3 at 172:6-18, 249:3-25; *see also* Ex. 3 at 172:16-18 ("Q.  So what is the basis for your opinion that Berkadia had discretion in that context?  A. I just believe it.").)[5]  One would expect more from a purported "expert" who charged $975 dollars per hour for his time and who would not sit for his deposition until he was paid in advance for his deposition time.  (Ex. 3 at 9:16-26:14; 73:8-14.)   In any event, the *Daubert* standards are dispositive of Tenzer's two Declarations which, as detailed herein, in many instances do not even contain expert opinions.

---

[4] As discussed *infra*, Section IV, in the waning minutes of Tenzer's November 29 deposition, Plaintiffs' counsel sought to elicit three new, previously undisclosed opinions from Tenzer.  The Court should strike those untimely opinions for the reasons discussed below.

[5] Notwithstanding his lengthy career, Tenzer has never opined on the issues that are relevant to this case (*i.e.*, the impact of loan servicers' alleged acts on a borrower's ability to refinance a loan, late fees, the process by which CMBS trusts sell notes, or the process of maintaining confidentiality under a master confidentiality agreement).  (Ex. 3 at 90:4-7, 92:21-24, 89:25-90:3, 92:25-93:4, 205:17-20, 214:22-24.)

**C.      Detailed Description Of The Four Opinions Contained In Tenzer's Original Declaration.**

Tenzer's Original Declaration contains four opinions.  Each opinion is identified below along with a preliminary overview of the defects with each opinion.

*Tenzer's purported "opinion" entitled "Improper Acts by LNR and Berkadia"*

Tenzer's first "opinion" is entitled "Improper Acts by LNR and Berkadia."  This opinion is that "[b]ut for the conduct of LNR," Plaintiffs could have refinanced with Calmwater Capital on October 11, 2016.[6]  (Ex. 1 at II.1.a.1.)  Tenzer supports this purported opinion on causation by relying on his summary of alleged facts, most of which are either irrelevant or directly contradicted by the record as set forth in pages 4 through 14 of the Opening Brief in Support of Lender Defendants' Motion for Summary Judgment.[7]  (D.I. 410.)  Incredibly, and tellingly with respect to how far he stretches to create purported expert opinions, Tenzer even swore under oath to the truth of the facts in his reports (about which he has exactly no personal knowledge).  (Exs. 1 and 2.)  Tenzer's flawed causation theory is also based on the unfounded premise that LNR's conduct delayed the closing of the loan just enough to give Plaintiffs' tenant a window to renegotiate a lease provision.  This theory is unfounded as set forth in Lender Defendants' Motion for Summary Judgment (demonstrating that the purported closing could not take place on September 30 through at least October 11 due to Plaintiffs' failure to complete all required closing projects).  (D.I. 410.)

---

[6]  Tenzer's opinion is limited solely to the Plaintiffs' failure to close on those dates.  He offers no opinion on whether Plaintiffs could have closed on any other date, nor whether any Lender Defendant conduct prior to Calmwater's issuance of a term sheet on September 21, 2016 affected Plaintiffs' ability to close on October 11, 2016.  (Ex. 2 at 108:21-109:1, 125:15-126:12, 131:19-133:12, 183:24-184:10.)

[7]  For example, Tenzer opines that Lender Defendants' request for a written loan commitment from UBS was "not typical in the CMBS industry," (Ex. 1 at II.1.d), but disregards that the parties have stipulated that no damages flowed from said request.  (D.I. 399.)

*Tenzer's purported "opinion" entitled "Berkadia and LNR Imposed Excessive and Unauthorized Charges and Late Fees"*

Tenzer's second "opinion" is entitled "Berkadia and LNR Imposed Excessive and Unauthorized Charges and Late Fees." (Ex. 1 at II.2.c-f.)  This opinion is offered in support of the Declaratory Judgment Claim.  To that end, Tenzer opines that what Tenzer defined as a contractual Late Payment fee and other similar charges that Lender Defendants included in a September 30, 2016 payoff statement "are penalties that are not proportional to actual costs experienced by the Lender or are random unsupported charges imposed on the Borrower to increase both LNR's revenue and/or the lender's cash flow." (Ex. 1 at II.2.f.)  But this "opinion" consists of nothing more than Tenzer's interpretation of: (a) the Loan Agreement's Late Payment provision, *see* Ex. 1 at II.2.c.i ("lender misapplied this provision"); and (b) Arkansas law as applied to that provision, *see* Ex. 1 at II.2.d ("I conclude it is a clearly a punitive penalty . . . .").  Indeed, Tenzer reaches his legal conclusion that the contractual fee is disproportionate to the Lender Defendants' "actual costs"  without considering the plain language of the contract which provides that  the contractual fee is "to compensate Lender for the loss of the use of such delinquent payment."[8]

*Tenzer's purported "opinion" entitled "Investor Due Diligence ~ Loan Purchase"*

Tenzer's third "opinion" is entitled "Investor Due Diligence ~ Loan Purchase." (Ex. 1 at II.3.a.iii.5.)  This opinion does not contain any opinion at all.  (*Id.*)  Instead, this "opinion" is nothing more than a description of Tenzer's subjective understanding of some aspects of due diligence in the commercial lending space. (*Id.*)

---

[8] This is not the first time Tenzer has ignored contract language while purporting to opine on the meaning of a contract.  In a recent lender liability adversary proceeding, the Bankruptcy Court for the Southern District of New York rejected Tenzer's testimony concerning a contractual fee as "unpersuasive" because it was "contrary to the plain language of the" applicable contract.  *BH Sutton Mezz LLC v. Sutton 58 Associates LLC (In re BH Sutton Mezz LLC)*, Adv. No. 16-01187-SHL, D.I. 58 at 46 (Bankr. S.D.N.Y. Dec. 1, 2016).

*Tenzer's purported "opinion" entitled "Atypical Note Buyer Activity"*

Tenzer's fourth "opinion" is entitled "Atypical Note Buyer Activity." (Ex. 1 at II.4.e.i & II.4.f.ii.) This purported opinion rests on a litany of incomplete facts relating to the Confidentiality Agreement Claim. (*Id.*) Apparently drawing inferences from the legal theories relating to fiduciary duties, Tenzer's "opinions" are nothing more than the apparent legal statements that "Taconic relied heavily on Somera's due diligence" and that LNR negotiated for favorable contractual protection "because they [*sic*] could." (*Id.*) Tenzer does not disclose any methodology underlying his inferences nor does his report identify how Tenzer is qualified to make such conclusions or inferences (including his qualifications to apparently opine on Taconic's and LNR's states of mind).

**D.    Detailed Description Of The Three Opinions Contained In Tenzer's Addendum Declaration.**

Tenzer's Addendum Declaration contains three opinions which are the subject of the Motion.[9] Each opinion is identified below along with a preliminary overview of the defects with each opinion.

*Tezner's purported "opinion" entitled "Actions by Berkadia"*

Tenzer's Addendum Declaration begins with a section entitled "Actions by Berkadia." This section primarily consists of: (a) Berkadia deposition testimony excerpts; and (b) a rehash of incomplete and irrelevant facts relating to Plaintiffs' refinancing efforts and Lender Defendants' alleged effect on the same. (Ex. 2 at 3-5; *see also* D.I. 410 at 4-14.) Tenzer therefore opines that: (i) parties to a loan closing transaction typically work together in good faith; and (ii) some lenders and servicers have discretion to forbear defaults. (Ex. 2 at II.1.a.) The remainder of Section II.1

---

[9] As stated, the Motion does not address Tenzer's opinion which is in rebuttal to Somera's expert report and/or testimony. (Ex. 2 at II.4.)

DM3\6215577.4

of the Addendum Declaration consists of Tenzer's legal interpretation of Berkadia's alleged contractual duties under the Loan Agreement, Promissory Note and its Subservicing Agreement. (*Id*. at II.1.f-1.h.)  As to the bases for his purported opinions, Tenzer stated during his deposition that he "just believe[s]" his opinion to be true.  (Ex. 3 at 170:6-172:18.)  Tenzer does not explain why his subjective beliefs concerning contracts or supposed duties are relevant to this case.

> ### *Tenzer purported "opinion" entitled "Confidentiality"*

Tenzer's second "opinion" in the Addendum Declaration summarizes Tenzer's beliefs as to the importance of what Tenzer describes as "confidentiality" in the lending community.  (Ex. 2 at II.2.)  According to Tenzer, "confidentiality" is a matter of ethics that is important to brokers or lender professionals who have to maintain their reputations.  (*Id*.)  Tenzer also appears to opine that his disclosure of confidential information "could" have ramifications on his California Broker License.  (*Id*.)  Broker ethics, lender reputations, and Tenzer's California Broker Licenses are not at issue in this case.  (*See generally* D.I. 268.)

> ### *Tenzer's purported "opinion" entitled "Closing"*

Tenzer's third "opinion" in the Addendum Declaration is that the Calmwater loan would have closed on October 11, 2016 "but for the delays imposed by LNR's processing and release of the payoff statement."  (Ex. 2 at II.3.)  This opinion is nothing more than a legal conclusion on causation which is not a proper expert opinion.  This opinion also ignores the undisputed evidence which proves that neither Plaintiffs nor Calmwater were ready to close on October 11, 2016, or on any other date, for reasons that had nothing to do with Lender Defendants.  (D.I. 410 at 13-14; Ex. 3 at 222:9-224:3 (agreeing the Plaintiffs had failed to execute documents, including but not limited to the loan agreement and guaranty agreement, as of October 11, 2016, that Calmwater Capital required from Plaintiffs in order to close the loan on October 11).)  Finally, Tenzer's causation

opinion is internally inconsistent because he elsewhere purports to opine that "Mitchell Williams" (*i.e.*, not Lender Defendants) somehow prevented Calmwater from closing on any loan by "impos[ing] unreasonable demands on the refinance lender, Calmwater, thereby stopping the refinancing." (Ex. 2 at II.1.c.) Inconsistent and factually unfounded expert "opinions" are not reliable.

## III.    APPLICABLE LEGAL STANDARDS

The Court has a "gatekeeping role" to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). "[I]n order for expert testimony to be reliable, and therefore admissible, it must be based on the methods and procedures of science rather than subjective belief or speculation." *In re TMI Litig.*, 193 F.3d 613, 670 (3d Cir. 1999). That is, "the expert must have good grounds for his or her belief." *Elcock v. Kmart Corp.*, 233 F.3d 734, 745 (3d Cir. 2000) (internal quotation marks and citation omitted). In turn, the relevance standard requires "a connection between the expert opinion offered and the particular disputed factual issues in the case." *In re TMI*, 193 F.3d at 670.

"The party offering the expert testimony has the burden of proving admissibility." *Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*, 430 F. Supp. 2d 346, 362 (D. Del. 2006) (citing *Daubert*, 509 U.S. at 592 n. 10); *see also* FED. R. EVID. 104(a). Under Third Circuit law, "Rule 702 has three major requirements: (1) the proffered witness must be an expert; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997); FED. R. EVID. 702.

IV.    **CERTAIN OF TENZER'S OPINIONS ARE UNTIMELY AND SHOULD THEREFORE BE STRICKEN (SECTIONS II.1(A)-(C), 2, AND 3 OF THE ADDENDUM DECLARATION)**

Portions of Tenzer's Addendum Declaration and his November 29, 2019 deposition testimony should be stricken for the first separate and independent reason that it contains opinions which are untimely.  Specifically, the Court ordered Plaintiffs to serve their expert report on or before November 12, 2019.  (D.I. 428 ¶ 3(c)(ii).)  Plaintiffs served Tenzer's original expert report on that date.  But Plaintiffs did not serve the Addendum Declaration until November 24 at approximately 11 pm Eastern time.  Moreover, the Addendum Declaration does not just contain rebuttal opinions (which is the only type of opinion that was proper at that point in the case).  Instead, the Addendum Declaration contains new and additional opinions which Tenzer should have included but did not include in his original report.  (Sections II.1(a)-(c), 2, and 3 of the Addendum Declaration.)  Moreover, in his November 29 deposition – just a few minutes before Tenzer's self-imposed hard break and over the objections of counsel (Ex. 4 at 55:01-05; 58:12-59:04; 60:11-20; 66:15-16) – Tenzer offered three new, previously undisclosed opinions in support of the Plaintiffs' Loan Claims, including based on documents that he had never previously read.  (Ex. 4 at 54:07-56:06; 56:11-59:17; 61:08-66:24.)

Sections II.1(a)-(c), 2, and 3 of the Addendum Declaration and the three new opinions from Tenzer's November 29 deposition should therefore be stricken and/or excluded in their entirety.  *See, e.g.*, *Trilogy Communications, Inc. v. Times Fiber Communications, Inc.*, 109 F.3d 739, 745 (Fed. Cir. 1997) ("[W]e conclude that the district court did not abuse its discretion by striking from the record the expert's reports and affidavit that were submitted after the due date."); *Cecala v. Newman*, 532 F. Supp. 2d 1118, 1157 (D. Ariz. 2007) (precluding untimely expert report); *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 312 (M.D.N.C 2002) (striking supplemental expert report as untimely).

9

V.    **CERTAIN OF TENZER'S OPINIONS ARE IRRELEVANT AND SHOULD THEREFORE BE STRICKEN AND/OR EXCLUDED (SECTIONS I.1(D)-(H) OF THE ADDENDUM DECLARATION)**

Sections I.1(d)-(h) of the Addendum Declaration should be stricken for the additional reason that they purport to include opinions on matters that are not at issue in this case. Specifically, Sections I.1(d)-(h) of the Addendum Declaration contain supposed opinions about the impropriety of Berkadia's alleged revenue. But Berkadia's alleged revenue is not at issue in this case nor does it form the basis of any of Plaintiffs' claims against Berkadia or any other Lender Defendant. (*See generally* D.I. 268.) Tenzer's purported opinions about Berkadia's alleged revenue should therefore be stricken for this separate and additional reason. *See, e.g.*, *Dominguez on Behalf of Himself v. Yahoo, Inc.*, 894 F.3d 116, 120-211 (3d Cir. 2018) (affirming trial court decision to strike expert testimony that "not shed light on the key factual question actually at issue in this case"); *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 278-79 (D. Del. 2013) (granting *in limine* motion striking expert testimony that was not relevant to case).

VI.    **TENZER'S OPINIONS CONCERNING LNR'S AND BERKADIA'S ALLEGED MISCONDUCT DO NOT SATISFY ANY OF THE DAUBERT STANDARDS (SECTION II.1 OF THE ORIGINAL DECLARATION AND SECTIONS II.1 AND II.3 OF THE ADDENDUM DECLARATION)**

Plaintiffs' Loan Claims are based on their theory that Lender Defendants' supposed misconduct prevented Plaintiffs from closing on a refinancing loan in 2016. To support that theory, Section II.1 of the Original Declaration and Sections II.1 and II.3 of the Addendum Declaration include Tenzer's opinions that: (i) Berkadia and LNR owed Plaintiffs certain contractual and extra-contractual duties; (ii) Berkadia and LNR failed to comply with those alleged duties; and (iii) such failures caused Plaintiffs' failed refinancing. (*See* Ex. 2 at II.1.c.) These opinions should be stricken and/or excluded for the following separate and independent reasons.

A.    **Tenzer's Opinions About Berkadia's And LNR's Alleged Misconduct Are Not Based On Any Specialized Knowledge, Skill, Experience, Training, Or Education.**

An expert witness must have "specialized expertise," *i.e.*, "skill, knowledge, or experience in the field as to make it appear that his opinion will probably aid the trier of fact in his search for the truth." *Aloe Coal Co. v. Clark Equip. Co.*, 816 F.2d 110, 114 (3d Cir. 1987) (citations omitted); *see also Elock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994)).   Tenzer's Loan Claim opinions are not based on any specialized knowledge, skill, experience, training, or education as set forth below.

1.    **Tenzer's Subjective Conclusions Are Not Expert Opinions.**

Much of Tenzer's supposedly "expert" opinions concerning the Loan Claims are not based on any actual expertise but instead consist of Tenzer's subjective and unsupported conclusions as to the manner in which Lender Defendants supposedly should have acted toward Plaintiffs.  (*See, e.g.*, Ex. 2 at II.1.a ("Industry standards require good faith cooperation between the servicer or special servicer of the loan to be repaid and the borrower"); Ex. 3 at 216:8-10 ("I believe they have the discretion to grant extensions").)  Tenzer's subjective opinions are not proper expert testimony. *See, e.g.*, *Laverdi v. Jenkins Twp.*, 49 F. App'x 362, 365 (3d Cir. 2002) (affirming exclusion of expert whose testimony as more akin to lay testimony where it was "based solely on her personal observations about what she has done or would do in similar situations"); *Pell v. E.I. DuPont De Nemours & Co.*, 231 F.R.D. 186, 192 (D. Del. 2005) ("[T]estimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province of the fact-finder").

2.    **No Expert Testimony Is Needed To Read And Understand Plain Contract Terms And Other Evidence.**

Tenzer's Loan Claim opinions are also based on nothing more than his simple review of emails and the plain language of loan documents. (*See, e.g.*, Ex. 3 at 100:19-102:14, 113:12-119:3,

156:24-159:20.)  This Court can conduct that exact same review of the evidence on its own, and without Tenzer's "expertise."  *See, e.g.*, *Pell*, 231 F.R.D. at 192 (citing *S.E.C. v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998) ("Expert testimony may not be used merely to repeat or summarize what the jury independently has the ability to understand.")); *Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc.*, 350 F. Supp. 2d 582, 588 (D. Del. 2004) (same).

> **B.**    **Tenzer's Loan Claim Opinions Are Not Based On Any Principle Or Method And Are Therefore Unreliable.**

As Tenzer freely admits (Ex. 3 at 133:22-134:19, 212:25-213:21), his Loan Claim opinions are not based on the application of any principle or method, much less the required application of a reliable principle/method to the facts of this case.  *See* FED. R. EVID. 702(c)-(d).  This is not a surprise given that, as stated, Tenzer has never previously rendered these types of opinions.  Expert testimony should be rejected where the Court is unable to "discern a testable hypothesis to support his opinions, nor . . . any standards governing [the] analysis."  *Williams v. U.S.*, 321 F. App'x 129, 132 (3d Cir. 2009).  That is exactly the case here where Tenzer repeatedly confirmed that his purported opinions are true because "I [Tenzer] just believe it."  (Ex. 3 at 172:18.)

"Although *Daubert* does not require a paradigm of scientific inquiry as a condition precedent to admitting expert testimony, it does require more than . . . haphazard, intuitive inquiry."  *Oddi v. Ford Motor Co.*, 234 F.3d 136, 156 (3d Cir. 2000).  "The expert must explain how and why he or she has reached the conclusion being proffered and must have as a basis more than a subjective belief or speculation."  *Cryovac*, 430 F. Supp. 2d at 362.  In turn, the Court "'must examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used.'"  *Id.* at 363 (quoting *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999)).

Tenzer provides no methodology or procedure underlying Tenzer's purported opinions.

12

Tenzer instead believes the Lender Defendants engaged in misconduct that caused damage because he says so. (Ex. 3 at 133:13-134:15.) Tenzer's mere "*ipse dixit* [*i.e.*, it's true because Tenzer says it's true] does not withstand *Daubert*'s scrutiny." *Oddi*, 234 F.3d at 158; *see Furlan v. Schindler Elevator Corp.*, 516 F. App'x 201, 207 (3d Cir. 2013) (expert testimony that "would be no more than a 'subjective belief or unsupported speculation,' rather than opinion 'based on the methods and procedures of science,' . . . would not assist the jury in understanding or determining a fact at issue") (quoting *Oddi*, 234 F.3d at 158); *Williams*, 321 F. App'x at 132 (affirming exclusion of expert testimony "replete with conclusory statements with no scientific method tying an alleged cause to an alleged effect"); *State Farm Fire & Cas. Co. v. Holmes Prods.*, 165 F. App'x 182, 186 (3d Cir. 2006) (affirming exclusion of expert testimony "not supported by any scientific analysis or methodology").

### C.     Tenzer's Loan Claim Opinions Are Not Based On Sufficient Facts And Are Therefore Unreliable.

Tenzer's Loan Claim opinions also do not meet the Rule 702 requirements because they are contradicted by the undisputed facts in this case, as well as Tenzer's own sworn testimony. For example, Tenzer's Loan Claim opinions are based on his incorrect assertions that, but for certain Lender Defendant conduct, Plaintiffs could have closed their possible Calmwater loan on September 30, 2016 and/or October 11, 2016. (Ex. 1, Sections I.1; Ex. 2, Section II.3.)[10]  But Tenzer himself conceded during his deposition the facts which demonstrate that no such closings were possible notwithstanding any alleged act or omission by any Lender Defendant. (Ex. 3 at 223:9-225:5; *see also id.* at 115-19 (admitting such conditions would need to be met before loan

---

[10] Tenzer's opinion that Lender Defendants frustrated an October 11, 2016 closing date is inconsistent with Plaintiffs' own complaint which only alleges that Lender Defendants frustrated a September 30, 2016 closing date and that the payoff statement on October 7 did not include a late charge. (D.I. 268 ¶¶ 52–56, 77-102, 118-19, 127-32.)

could close).)  Moreover, Tenzer's causation opinion ignores other undisputed record evidence establishing that no September 30, 2016 or October 11, 2016 closings were possible for reasons that have nothing at all to do with the Lender Defendants.  (*See, e.g.*, D.I. 410 at 13-14.)

A supposedly "expert" opinion is not reliable where it does not even have the basic facts straight.  *See Advo, Inc. v. Philadelphia Newspapers, Inc.*, 51 F.3d 1191, 1198-99 (3d Cir. 1995) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict.") (internal quotation marks and citation omitted); *see also Montgomery Cty. v. Microvote Corp.*, 320 F.3d 440, 448-49 (3d Cir. 2003) (proper to reject expert testimony as unreliable where expert is unable to identify source of documents purportedly underlying opinion beyond that they were sample "selected by an attorney"); *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002) ("It is an abuse of discretion to admit expert testimony which is based on assumptions lacking any factual foundation in the record."); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1175 (3d Cir. 1993) ("An opinion based on false assumptions is unhelpful in aiding the jury in its search for the truth, and is likely to mislead and confuse.") (internal quotation marks and citation omitted); *Tse v. Ventana Med. Sys., Inc.*, 123 F. Supp. 2d 213, 226 (D. Del. 2000) (rejecting expert opinion based on assumption where "record before the court . . . clearly establishes that assumption to be erroneous"), *aff'd*, 297 F.3d 210 (3d Cir. 2002).

Indeed, and apparently acknowledging that his opinions were unfounded, Tenzer backed away from his unqualified written opinion during his deposition by testifying that it was merely "possible" that the Calmwater loan "presumably" could have closed earlier but for the Lender Defendants' actions.  (Ex. 3 at 112:6-21, 139:9-14.)  These types of presumptions (*i.e.*, guesses)

14

are not admissible "expert" testimony. *See, e.g.*, *Oddi*, 234 F.3d at 158 (affirming rejection of

expert testimony that rested on "little, if any, methodology beyond his own intuition"); *In re TMI*

*Litig.*, 193 F.3d at 670 (affirming exclusion of expert testimony based on "an assumption");

*Leonard*, 981 F. Supp. 2d at 280 (rejecting testimony that "speculates about what is not known

(and might or might not be the case)"); *Izumi Prods. Co. v. Koninklijke Philips Elecs. N.V.*, 315 F.

Supp. 2d 589, 602 (D. Del. 2004) (rejecting opinion based on "subjective belief" rather than

testing, substantiating literature or other grounds of support), *aff'd*, 140 F. App'x 236 (Fed. Cir.

2005).[11]

    **D.**    **Tenzer's Loan Claim Opinions Do Not Satisfy *Daubert* Because The Opinions Are Improper Legal Conclusions Which Tenzer Is Not Qualified To Give.**

    Tenzer's Loan Claim opinions should be stricken and/or excluded for the additional

separate and independent reason that they are legal conclusions that are well beyond any of

Tenzer's supposed expertise or experience.  Specifically, Tenzer purports to opine that Lender

Defendants owed certain duties, breached such duties, and that such breaches proximately caused

damages.  (Ex. 1, Section II.1; Ex. 2, Sections II.1 and II.3.)  But these opinions are just legal

conclusions that impermissibly invade the province of this Court and are therefore not proper under

well-established Third Circuit law.  *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d

Cir. 2006) (holding that an "expert witness is prohibited from rendering a legal opinion"); *see also*

*Patrick v. Moorman*, 536 F. App'x 255, 258 (3d Cir. 2013); *Dow Chem. Canada Inc. v. HRD*

*Corp.*, 656 F. Supp. 2d 427, 435 (D. Del. 2009) (confirming that the Court should strike "expert

---

[11] Tenzer's Original Declaration also refers to alleged conduct by the Lender Defendants(*i.e.*, conduct which he swore to be true even though he has no personal knowledge of the same) that pre-dates September 21, 2016.  (Ex. 1 at II.1.b(i)-(ix).)  But Tenzer is not opining on whether LNR or Berkadia's conduct before September 21, 2016 had any impact on Plaintiffs' ability to close any Calmwater Loan.  (Ex. 3 at 125:6-126:7.)  Tenzer's reference to (and apparent reliance on) alleged facts which pre-date September 21, 2016 should be rejected for this additional reason.

testimony as to legal duties, standards or ramifications arising from a contract") (internal quotation marks and citation omitted), *aff'd*, 587 F. App'x 741 (3d Cir. 2014); *Transportes Aereos Pegaso, S.A. de C.V. v. Bell Helicopter Textron Inc.*, 623 F. Supp. 2d 518, 533 (D. Del. 2009) (rejecting testimony relating "to the question of the existence or non-existence of a contract" because the "Federal Rules do not permit experts to testify as to legal conclusions"); *Cryovac*, 430 F. Supp. 2d at 365 (expert may not opine on "the substance of case law, or on the validity of any contract between" parties).

Nor are experts "permitted to testify as to . . . the standard of reasonableness" governing a party's conduct, *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 443 (D. Del. 2004), or for "legal terms of art" such as "substantial cause." *Flickinger v. Toys R Us-Delaware, Inc.*, 492 F. App'x 217, 224 (3d Cir. 2012). Thus, and even setting aside Tenzer's mischaracterization of a limited subset of the record, his flawed legal conclusions concerning the reasonableness Lender Defendants' supposed conduct and on causation are not appropriate expert testimony and should therefore be stricken.

For the foregoing many reasons, Section II.1 of the Original Declaration and Sections II.1 and II.3 of the Addendum Declaration (and any anticipated oral opinions based on those sections) should be stricken and/or excluded in their entirety.

**VII.    TENZER'S DECLARATORY JUDGMENT CLAIM OPINION DOES NOT MEET ANY OF THE DAUBERT STANDARDS AND SHOULD THEREFORE BE STRICKEN AND/OR EXCLUDED (SECTION II.2 OF THE ORIGINAL DECLARATION)**

Plaintiffs' Count V seeks a declaratory judgment that the Late Payment provision of the governing Loan Agreement is "impermissible and illegal" under Arkansas law. (D.I. 268 ¶ 105.) To support Plaintiffs' legal theory, Tenzer opines that "the above amounts charged and added to the Loan's principal are penalties that are not proportional to actual costs experienced by the

16

Lender or are random unsupported charges imposed on the Borrower to increase both LNR's revenue and/or the lender's cash flow." (Ex. 1 at II.2.f.) This opinion should be rejected for the following separate and independent reasons.

## A. Tenzer's Declaratory Judgment Claim Opinion Is An Improper Legal Conclusion.

Tenzer's Declaratory Judgment Claim opinion is just based on his interpretation of the Late Payment provision and his conclusion that the provision a "penalty." At his deposition, Tenzer freely admitted that these "opinions" are predicated on the language of the contract provision and, ultimately, turn on his contract interpretation. (Ex. 3 at 185:12-23, 188:20-189:22.) Indeed, Tenzer correctly acknowledged that ultimately "the judge is going to make the decision" on these issues. (*Id.* at 190:4-5.)

As discussed above, however, matters of contract interpretation are not the province of experts. *See, e.g.*, *Dow Chem.*, 656 F. Supp. 2d at 435; *Transportes Aereos Pegaso*, 623 F. Supp. 2d at 533; *Cryovac*, 430 F. Supp. 2d at 365. Similarly, whether or not a contract provision is a penalty is a legal question. *See, e.g.*, *Hayes v. First Nat'l Bank of Memphis*, 507 S.W.2d 701, 703 (Ark. 1974). Moreover, experts simply may not opine on "the validity of any contract between" parties. *Cryovac*, 430 F. Supp. 2d at 365. The Court therefore should strike Tenzer's Declaratory Judgment Claim opinion as an improper legal opinion. *See, e.g.*, *Berckeley*, 455 F.3d at 217.

## B. Tenzer's Declaratory Judgment Claim Opinion Is Not Based On Any Specialized Knowledge, Skill, Experience, Training, Or Education That Will Assist The Court In Resolving The Declaratory Judgment Claim.

Tenzer's Declaratory Judgment Claim opinion is not based on any specialized knowledge that he actually possess. Tenzer is not a lawyer. (Ex. 3 at 183:19.) Tenzer has no experience with any Arkansas real estate transactions. (*Id.* at 241:19-20.) Tenzer has never offered expert testimony concerning a late payment fee. (*Id.* at 205:17-20.) Tenzer has never negotiated any

17

contract provision concerning such a fee.  (*Id.* at 205:21-23.)  Tenzer therefore lacks the "skill, knowledge, or experience in the field" to opine on issues relating to the interpretation or enforceability of a contract provision.  *Aloe Coal Co.*, 816 F.2d at 114.

### C.   Tenzer's Declaratory Judgment Claim Opinion Is Not Based On Any Principle Or Method And Is Therefore Unreliable.

Tenzer's Declaratory Judgment Claim opinion is not based on any principle or method, much less the reliable application of any such principle/method to the facts of this case.  FED. R. EVID. 702(c)-(d).  There really can be no dispute on this issue.  For example, the thrust of Tenzer's legal interpretation is that the Late Payment provision results in charges that are "not proportional to actual costs experienced by the Lender."  (Ex. 1 at II.2.f.)  But at his deposition, Tenzer admitted that he has no idea how to measure the costs typically incurred by loan defaults.  (Ex. 3 at 201:17-202:10, 203:17-20.)  Tenzer also testified that he reached his conclusions without making any calculation of the actual costs resulting from the default at issue in this case.  (*Id.*)  These types of purported "opinions" which rest on "little, if any, methodology beyond [the expert's] own intuition" do not satisfy *Daubert*.  *Oddi*, 234 F.3d at 158.

For the foregoing many reasons, Section II.2 of the Original Declaration (and any anticipated oral opinions based on those sections) should be stricken and/or excluded in their entirety.

### VIII.  TENZER'S CONFIDENTIALITY AGREEMENT CLAIM OPINIONS DO NOT SATISFY ANY OF THE DAUBERT STANDARDS AND SHOULD THEREFORE BE STRICKEN AND/OR EXCLUDED (SECTIONS II.3 AND II.4 OF THE ORIGINAL DECLARATION AND SECTION II.2 OF THE ADDENDUM DECLARATION)

Plaintiffs assert in their Confidentiality Agreement Claim that Taconic breached a Master Confidentiality Agreement to which it was not a party.  (D.I. 268 ¶¶ 121-26.)  Tenzer's reports do not address the fact that Taconic is not a party to that agreement or the absence of any damage

DM3\6215577.4

caused by the purported breach.  (*See, e.g.*, D.I. 410 at 26-30.)  Nevertheless, Tenzer attempts to support the Confidentiality Agreement Claim by opining that: (i) an investor "would want very accurate financial projections" before committing $30 million to a commercial loan transaction (Ex. 1 at II.3.a.iii.5); (ii) "Taconic relied heavily on Somera's due diligence" (Ex. 1 at II.4.e.1); (iii) LNR negotiated for favorable contractual protection "because they [*sic*] could" (*id*. at II.4.f.2); and (iv) as a matter of industry practice, maintaining confidentiality is important for reasons of ethics, reputation, and licensure.  (Ex. 2 at II.2.)  In talking about these confidentiality issues, Tenzer showcases his expert ability to divine the mindset and intentions of third parties, including what they rely on and why they take certain actions.  These opinions should be rejected for the following separate and independent reasons.

First, Tenzer's Confidentiality Agreement Claim "opinions" consist of little more than (a) subjective comments on the commercial real estate industry and (b) speculation concerning Taconic and Somera drawn from Tenzer's purported understanding of the law of fiduciaries.  (Ex. 1 at II.3.a & II.4.e.)  These unfounded "opinions" are not admissible expert evidence.  *See, e.g.*, *Furlan*, 516 F. App'x at 207 (expert testimony that "would be no more than a 'subjective belief or unsupported speculation,' rather than opinion 'based on the methods and procedures of science,' . . . would not assist the jury in understanding or determining a fact at issue") (quoting *Oddi*, 234 F.3d at 158).

Second, Tenzer's Confidentiality Agreement Claim opinions are just Tenzer's subjective belief concerning matters such as (i) mortgage broker's ethical and reputational concerns; and (ii) baseless inferences concerning why and how Taconic and Somera interacted.  (Ex. 1 at II.4.)  Moreover, Tenzer's *ipse dixit* speculation that Taconic's due diligence and contract negotiation is "atypical" is not helpful to the factfinder (*i.e.*, this Court).  Instead, the Court is entirely capable of

reviewing the entire discovery record on its own and does not need Tenzer's supposed "expertise" to do so.  *See Lipson*, 46 F. Supp. 2d at 763 ("Expert testimony may not be used merely to repeat or summarize what the jury independently has the ability to understand.").

For the foregoing many reasons, Sections II.3 and II.4 of the Original Declaration and Section II.4 of the Addendum Declaration (and any anticipated oral opinions based on those sections) should be stricken and/or excluded in their entirety.

## IX.   **CONCLUSION**

For the foregoing reasons, the Tenzer conclusions and opinions identified herein should be stricken and/or excluded in their entirety from all proceedings in this case.  Lender Defendants also request such other and further relief this Court deems just and proper.

Dated: Wilmington, Delaware
           December 2, 2019

DUANE MORRIS LLP

*s/ Sommer L. Ross*
Sommer L. Ross (DE 4598)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801-1659
Telephone:  (302) 657-4900
Facsimile:  (302) 657-4901
Email: slross@duanemorris.com
-and-

Paul E. Chronis, Esq. (*pro hac vice*)
Elinor H. Murarova, Esq. (*pro hac vice*)
190 South LaSalle Street, Suite 3700
Chicago, Illinois 60603
Telephone: (312) 499-6700
Facsimile: (312) 499-6701
Email:     pechronis@duanemorris.com
              ehart@duanemorris.com

-and-

Meagen E. Leary, Esq. (*pro hac vice*)
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105
Telephone: (415) 957-5000
Facsimile: (415) 520-0291
E-mail: meleary@duanemorris.com

*Counsel to Wells Fargo Bank, N.A., as Trustee for the Registered Holders of COMM 2006-C8 Commercial Mortgage Pass-Through Certificates, LNR Partners, LLC, Berkadia Commercial Mortgage, LLC, Little Rock-400 West Capitol Trust, and Taconic Capital Advisors, LP*

21

DM3\6215577.4