## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NNN 400 CAPITAL CENTER 16, LLC, et al., | ) | Case No. 16-12728 (JTD) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtor(s). | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | **D.I. 446, 459, 462** |

## MEMORANDUM OPINION AND ORDER ON THE UNITED STATES TRUSTEE'S MOTION TO REVOKE OR TERMINATE RETENTION OF RUBIN AND RUBIN, P.A.

### I.    INTRODUCTION

The integrity of the bankruptcy system, indeed the entire legal system, is dependent in large part on the ethical conduct of lawyers, their adherence to the law, and their compliance with the rules of the courts before which they appear.  In addition to the general ethical obligations of all lawyers, the Bankruptcy Code and Rules impose strict disclosure requirements on professionals seeking to represent debtors and committees and prohibits the sharing of compensation by estate professionals. Indeed, the Court has already levied significant sanctions on Debtors' special counsel in this case for disclosure violations. Now the Court is presented with even more serious allegations of disclosure violations, improper fee sharing and ethical misconduct by that same counsel, Rubin and Rubin, PA ("Rubin & Rubin").

The United States Trustee (the "Trustee") and the defendants in an underlying adversary proceeding ("Defendants")[1] allege that, among other things, Rubin & Rubin: (1) entered into an

---

[1] The Defendants in the adversary proceeding case number 18-50384 (the "Adversary") are Wells Fargo Bank, N.A., as Trustee for the Registered Holders of Comm 2006-C8 Commercial Mortgage Pass-Through Certificates; LNR Partners, LLC, a Florida Limited Liability Company; Berkadia Commercial Mortgage, LLC, A Delaware Limited Liability Corporation; Little Rock - 400 West Capital Trust, a Delaware Statutory Trust; Somera Road, Inc., a New York Corporation; and Taconic Capital Advisors, LP, a Delaware Limited Partnership

improper fee sharing arrangement with a loan broker pre-petition and failed to disclose the agreement at the time of its retention;  (2) filed a false sworn statement with the Court at the time of its retention stating it did not have any fee sharing agreements; (3) failed to seek retention of the same loan broker post-petition; (4) entered into another improper fee sharing agreement with the loan broker post-petition without disclosure to the Court; (5) caused the Debtor to pay the expenses of the loan broker post-petition without Court approval; (6) failed to disclose at the time of its retention its' pre-petition representation of the Debtors' real estate property manager (and a creditor of the Debtors), a conflict of interest, and a direct violation of its own engagement agreement with the Debtors; and (7) filed a false sworn statement that it did not represent any of the Debtors' creditors pre-petition.  Because of these alleged violations, the Trustee and the Defendants seek the disqualification of Rubin & Rubin as well as disgorgement of all its fees and expenses.[2]  [D.I. 446, 459, 462].

The Court conducted an evidentiary hearing on July 29 and 30, 2020 on the Trustee's Motion as well as the joinders filed by the Defendants (the "Disqualification Hearing").  Having considered the evidence presented, and for the reasons discussed below, the Court agrees that Rubin & Rubin committed numerous ethical violations, disregarded the disclosure requirements of the Bankruptcy Code and Rules, made false sworn statements of fact in connection with its retention, and disregarded the orders of this Court.  As a result, the Court will order the disqualification of Rubin & Rubin to act as counsel to the Debtors and order the disgorgement of all fees and expenses paid, or to be paid, to Rubin & Rubin in connection with its representation

---

[2] Additional allegations were made that Rubin & Rubin caused the Debtors to pay certain expenses in violation of the Court's Cash Collateral Order, made payments to unretained professionals and engaged in improper conduct during depositions and at trial in the Adversary.  The Court finds that there was either insufficient evidence presented at the Disqualification Hearing to support these allegations, or they were already addressed by the Court at the time of the alleged misconduct.

of the Debtors.  In addition, the Court will order Rubin & Rubin to reimburse the Debtors'

estates for an unauthorized payment to a third party as explained below.

## II.    GENERAL CASE BACKGROUND

Debtors comprise a group of individual limited liability companies created to acquire an

ownership interest in the Regions Center, an office building located in Little Rock, Arkansas, as

an Internal Revenue Code Section 1031 tax deferred exchange. On April 16, 2016, Debtors

retained Rubin & Rubin as counsel to advise them in evaluating and potentially restructuring

their tenants-in-common ownership interests. At the time, the loan was facing a looming

maturity date. Attempts to refinance the Regions Center's debt failed and the loan defaulted.

The Debtors filed for bankruptcy protection on December 9, 2016 after the lenders filed a

foreclosure action.  In 2018, after disputes with lender and the loan servicers regarding

refinancing efforts, Debtors filed the Adversary alleging breach of contract and related claims.[3]

## III.    FACTUAL BACKGROUND

### a.    Engagement and Fee Splitting with Seth Denison

In September 2016, as a part of its effort to help the Debtors refinance their loan, Rubin &

Rubin engaged the services of Seth Denison ("Denison") of Hart Advisors to assist with

identifying a lender to refinance the loan. Rubin & Rubin asserts that there was no "formal" written

retention agreement outlining Denison's work on behalf of the Debtors. There are, however, emails

containing Mark Rubin's ("Rubin") and Denison's understanding of the agreement. [Exh. MP-31;

MP-28; MP-27][4]. Rubin & Rubin claims that Denison worked on a non-exclusive basis to procure

---

[3] A complete recitation of the facts relating to the Adversary can be found at D.I. 602, the Court's Findings of Fact and Conclusions of Law.

[4] The parties submitted two sets of exhibits for the Disqualification Hearing. The Moving Parties' exhibits are designated as "MP-#" and the Rubin exbibits will be designated at "R-#." The transcript of the Disqualification Hearing [D.I. 628 and D.I. 629] is referred to as "Hr'g Tr."

a lender that would provide refinancing for the Debtors' loan. If Denison were successful, he and/or Hart Advisors would have been entitled to 1% of the loan amount as a commission (the "Denison Commission"). Based on the contemporaneous email communications, and Rubin's testimony at trial in the Adversary, half of the commission was "payable to Rubin & Rubin, for its assistance in securing the loan". [Exh. MP-28]. Rubin claimed at trial in the Adversary that any portion of the Denison Commission received would have been applied to Rubin & Rubin's fees for the benefit of the Debtors. [Exh. R-72, Trial Tr. at 1150:10-1154:8]. At the Disqualification Hearing, Rubin contradicted that testimony by asserting that the commission would not necessarily be applied to Rubin & Rubin's fees, but could have been applied to any of the closing costs which included Rubin & Rubin's fees. [D.I. 628, Hr'g Tr. at 259:12-23, 299:11-302:9]. Rubin & Rubin failed to disclose this pre-petition arrangement in its retention application. Rubin also failed to disclose this arrangement in his sworn declaration in support of Rubin & Rubin's retention. More troubling, Rubin failed to disclose the arrangement in his supplemental declaration in support of Rubin & Rubin's retention filed at the direction of the Court after being sanctioned for disclosure violations related to Rubin & Rubin's initial retention as special counsel to the Debtors.[5]

Rubin & Rubin argues that because there was no "binding, exclusive, or written agreement" between Rubin & Rubin and/or the Debtors on the one hand, and Denison and/or Hart Advisors on the other, and because the non-binding agreement was conditioned on closing a successful refinancing transaction (which did not occur) the non-binding agreement ended prior to the petition date. Thus, the argument follows, when the retention application was filed, Rubin & Rubin had no understanding of an existing agreement with Denison and/or Hart Advisors, and,

---

[5] The Court previously sanctioned Rubin & Rubin for failing to disclose that Rubin & Rubin, P.A. is a fictitious trade name used by to two other firms.  See D.I. 247 and 302 for the Court's prior opinions and orders regarding the sanctions.

therefore, no obligation to disclose the agreement. Significantly, however, Rubin took the position during his October 1, 2019 deposition, taken as a fact witness in the Adversary, that because Denison was the Debtors' agent pre-petition and he was the Debtors' counsel, communications between himself and Denison were privileged. [Exh. MP-17, Denison Oct. Dep. at 384-85].

Rubin & Rubin also argues that, pursuant to its Representation Agreement with the Debtors, any share of the Denison Commission that may have been received by Rubin & Rubin would have been applied to their attorneys' fees for the benefit of the client, and that this arrangement was "specifically disclosed and approved" by the Debtors. The only evidence of the purported disclosure to the Debtors is Rubin & Rubin's Representation Agreement. [Exh. R-1] The relevant portion of the Representation Agreement states that "[i]f other sources of payment become available from third parties for the services provided by the Law Firm on the Matter, then, *at its option*, the Law Firm may accept payment from such third parties and refund any funds received from the TIC Group for such services." [Exh. R-1 (emphasis added)]. This purported disclosure, which occurred prior to the agreement with Denison, is wholly inadequate to put the Debtors on notice of the fee splitting agreement under applicable ethical rules.  Rubin & Rubin also asserts that this arrangement was disclosed to the United States Trustee and other parties in interest in this case.  [D.I. 458, note 2]. As discussed below, Rubin & Rubin's position is without merit and would not relieve them of their disclosure obligations to this Court in any event.

In early 2017, after the bankruptcy filing, Rubin & Rubin re-engaged Denison to assist in securing financing for the Debtors.[6] Denison emailed  Rubin and Thomas Francella ("Francella"), Debtors' 327(a) counsel, seeking to enter into an agreement for a 1.25% broker fee that he had discussed with both Rubin and Francella. Rubin responded to Denison's email requesting that

---

[6] The US Trustee argues that this was not a new engagement, but rather a continuation of the pre-petition engagement.  Either way, disclosure was required.

Denison direct communications related to his work only to himself thus excluding Debtors' lead counsel from the subject matter.  In his email response, that included Francella, Rubin stated that "there is no agreement in place, nor has there ever been such an agreement" and that any broker fee would be "subject to the approval of the [Debtors] and the Court." [Exh. MP-27]. Notably, the email did not state that there would be a fee split, or that any fee split would be subject to court approval. Less than a week later, Denison emailed only Rubin summarizing an agreement with him regarding the engagement. [Exh. MP-31]. Among other things, the email listed an agreement to reimburse Denison for the $15,000 of his personal funds used to cover due diligence costs for Ladder Capital,[7] and an agreement to split any fee with Rubin 70/30, with 70% going to Denison. *Id*.

Rubin & Rubin's argument regarding the post-petition agreement is identical its argument regarding the pre-petition agreement. Rubin & Rubin takes the position that there was no agreement because there was never an "formal" written agreement. They also argue that, given Rubin's statement that any fee would be subject to court approval, no agreement ever existed because there was never court approval.  Rubin also asserts that he advised Denison that there was no commitment to him from the Debtors.  He further denies that he responded to Denison's email regarding the agreement, including fee splitting. [R-72, Trial Tr. at 1146].  Denison also claims that he did not believe he had any formal agreement with the Debtors or Rubin & Rubin. [Exh. MP-134, Denison Trial Dep. at 170:4-18].  As discussed below, neither Rubin's nor Denison's testimony is credible.

---

[7] Ladder Capital is a financing source that Denison introduced to the Debtors during their effort to refinance the loan.

Significantly, on January 9, 2019, Rubin caused the Debtors to reimburse Denison for his outstanding out-of-pocket due diligence expenses.[8] The payment was made from the DIP account without prior approval from the Court. This was one of the deal points in Denison's email to Rubin that was supposedly never discussed. Moreover, since Rubin intentionally cut lead bankruptcy counsel out of any discussions with Denison, Rubin is the only person who would have known about the agreement, and the only one who could have directed that the payment be made out of the Debtors' DIP account.

### b.  Rubin & Rubin's Representation of Moses Tucker

The Defendants as well as the US Trustee also brought to the Court's attention that Rubin & Rubin represented Moses Tucker, the Debtors' property manager, in connection with a possible pre-petition transaction involving the Regions Center.  This representation was confirmed by both Rubin & Rubin and Moses Tucker during depositions. [Exh. MP-15 at 377:5-378:11; Exh. MP-16 at 262:5-263:2].  Once again, Rubin & Rubin failed to disclose this representation in connection with its original retention application or after being sanctioned for a previously discovered disclosure violation.

Moses Tucker, the Debtors' pre- and post-petition property manager, is also one of the Debtor's largest unsecured creditors.[9] During discovery in the Adversary, Rubin testified twice under oath during depositions that Rubin & Rubin represented Moses Tucker pre-petition and refused to answer certain questions based upon an alleged attorney/client privilege. [Exh. MP-14, Rubin May Dep. at 158:3-160:2; Exh. MP-15, Rubin Oct. Dep. at 377:5-378:11]. In addition, while acting as counsel for the Debtors during the deposition of Lori McGhee, Moses Tucker's 30(b)(6)

---

[8]  Denison paid Ladder Capital a $15,000 deposit that was to be drawn down on for due diligence costs. Ladder Capital drew down on $11,400 and returned $3600 to Denison. The Debtors then reimbursed Denison for the $11,400.

[9]  Moses Tucker is listed in Schedule F as having an unsecured claim of $145,000.00. [Exh. MP-112].

witness, Rubin elicited testimony from her that Moses Tucker had been represented by Rubin &

Rubin pre-petition, correcting her testimony from earlier in the deposition in order to justify his

instructions to her not to answer certain questions. [Exh. MP-16, McGhee Dep. at 262:3-263:2].

Rubin & Rubin did not disclose its representation of Moses Tucker in connection with its retention.

[Exh. MP-6]. Moreover, Rubin & Rubin did not disclose this representation in connection with its

supplemental disclosures after being sanctioned for disclosure violations. [Exh. MP-123; D.I. 407].

At the hearing on the Disqualification Motion, Rubin contradicted his prior sworn

testimony and testified that Rubin & Rubin never, in fact, represented Moses Tucker. [D.I. 628,

Hr'g Tr. at 207:21-23, 290:24-291:10]. Instead, Rubin & Rubin now takes the position that Rubin

used "imprecise language" at the depositions and what he really meant was that Moses Tucker fell

under an "umbrella" of privilege as the agent of the Debtors. [D.I. 628, Hr'g Tr. at 207:24-209:19].

As discussed below, the Court finds that this after the fact explanation lacks all credibility.

## IV.    JURISDICTION

The Court has subject matter jurisdiction pursuant to 28 USC § 1334(b). This matter is a

core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before the United States

Bankruptcy Court for the District of Delaware under 28 U.S.C. § 1409(a).

## V.    DISCUSSION

### a.  Mandatory Disclosure Under Rule 2014

Before any order is entered approving the retention of a professional, the professional must

satisfy the requirements of Rule 2014 of the Federal Rules of Bankruptcy Procedure. Bankruptcy

Rule 2014 is the mechanism by which the Court enforces the provisions of Bankruptcy Code

section 327.[10] Rule 2014(a) requires, in relevant part, that:

---

[10] Under section 327(e), "the trustee, with the court's approval, may employ, for a specified purpose, other
than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest

> The application shall state the specific facts showing the necessity for the employment, name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a). The disclosure mandated under Rule 2014 "goes to the heart of the integrity of the bankruptcy system". *In re B.E.S. Concrete Prods., Inc.,* 93 B.R. 228, 236 (Bankr. E.D. Cal. 1988). The professional must disclose ***all*** connections and potential connections. *In re Universal Bldg. Products*, 486 B.R. 650, 663 (Bankr. D. Del. 2010) (Professionals do not have the option to "pick and choose which [connections] to disclose and which to ignore."). The standards of Rule 2014 are strict standards that demand full compliance and the failure to comply warrants sanctions. *Id*. at 663 ("[f]ailure to disclose connections itself is enough to warrant disqualification of counsel from employment."); *In re Filene's Basement, Inc*. 239 B.R. 845 (Bankr. D. Mass. 1999) (false Rule 2014 disclosure alone justified disqualification).

As further explained below, Rubin & Rubin violated Bankruptcy Code section 327(e) and Rule 2014 by failing to make full and accurate disclosures, and made false statements in connection with its retention both during its initial application for retention, and following the Court's order to amend its disclosures.

### b.  Rubin & Rubin's Representation of Moses Tucker

In order to support his refusal to answer certain questions during his deposition, Rubin testified under oath that Rubin & Rubin represented Moses Tucker in connection with an attempted

---

of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. 327(e).

refinancing of the Debtors' loan. Rubin's after-the-fact denial of that representation in order to avoid a disclosure violation lacks all credibility.

First, the language used by Rubin during the depositions was clear and unequivocal. Twice he testified that he "represented" Moses Tucker in order to assert an attorney client privilege to avoid answering certain questions. He also convinced Moses Tucker's 30(b)(6) witness to change her prior testimony to agree that, indeed, Rubin & Rubin represented Moses Tucker pre-petition to once again avoid answering questions regarding Moses Tucker's involvement in potential refinancing of Debtors' loan. The language Rubin chose was not imprecise. Indeed, Rubin is not only a lawyer, but by his own admission, a trial lawyer, who should be aware of the definition of an attorney/client relationship and the use of privilege during depositions.

Second, the evidence introduced at the Disqualification Hearing establishes the basis for Rubin's assertion that he did, in fact, represent Moses Tucker. As part of its efforts to assist the Debtors in refinancing their loan, Rubin & Rubin created a Delaware limited liability company, 400 Capital Holdings, LLC, which was to act as a vehicle to roll up the individual TIC owners' interests into a single entity. The managers of this new entity were identified as Chris Moses, Doug Laird, and Randall Lynch. [Exh. R-4]. Chris Moses is a principle of Moses Tucker. Doug Laird and Randall Lynch are TIC owners. In addition to Chris Moses, Jimmy Moses and Rett Tucker (also principals of Moses Tucker) were identified in marketing materials prepared by Rubin & Rubin as guarantors under the investment vehicle that would be used by 400 Capital Holdings, LLC to obtain the financing. [Exh. R-5]. As a part of the proposed transaction, Moses Tucker would waive amounts owed to it by the Debtors as part of its financial contribution to the deal. [D.I. 628, Hr'g Tr. at 250:14-251:2].

Rubin & Rubin now takes the position that because no transaction was ever consummated with 400 Capital Holdings, LLC, and because 400 Capital Holdings, LLC never had any employees or bank accounts, no attorney/client relationship existed between Rubin & Rubin and Moses Tucker or its principals. [D.I. 628, Hr'g Tr. at 152:4-11; D.I. 629, Hr'g Tr. at 376:8-377:10]. Rubin & Rubin's argument is without merit.  Without question, Rubin & Rubin had discussions with Moses Tucker and its principals about the creation of 400 Capital Holdings.  Indeed, one of the principals of Moses Tucker is a manager of the LLC, and two others are proposed guarantors of a potential financing. It is also clear that Rubin & Rubin discussed with Moses Tucker the waiver of its claims against the Debtors in return for a potential ownership interest in the Regions Center. [Exh. R-4].  It was these facts that Rubin was trying to keep from disclosing to the Defendants during the depositions in the Adversary, and the reason he asserted an attorney/client relationship with Moses Tucker.  Moreover, having taken the position that an attorney/client relationship existed in order to prevent the disclosure of information he did not want disclosed, he cannot now disavow it because it has become inconvenient.[11]

Rubin & Rubin's representation of Moses Tucker and its principals raises additional concerns about conflicts of interest between Rubin & Rubin and the Debtors.  Mr. Eidel (Attorney-In-Fact for Doris Eidel, owner of TIC 26) testified at the Disqualification Hearing that he made edits to Rubin & Rubin's proposed engagement agreement that included a specific prohibition on Rubin & Rubin's representation of Moses Tucker. [D.I. 629, Hr'g Tr. at 398:19-399:21]. Despite

---

[11] The only other explanation for Rubin's unequivocal statements that his firm represented Moses Tucker is that he was untruthful during his depositions. Counsel's argument that if read in context it becomes clear that Rubin was not actually asserting an attorney/client relationship, but rather, an "umbrella" of privilege is unpersuasive given Rubin's clear statements under oath.

this explicit prohibition, Rubin & Rubin undertook the representation of Moses Tucker without obtaining explicit written waivers from the Debtors.[12]

### c. Broker Fee Split Between Rubin And Denison

The U.S. Trustee argues that Rubin & Rubin violated section 504 of the Code by agreeing to share a percentage of Denison's Commission. Section 504 prohibits the sharing of compensation in almost all circumstances. Section 504 states that "a person receiving compensation or reimbursement under section 503(b)(2) or 503(b)(4) of this title may not share or agree to share (1) any such compensation or reimbursement with another person; or (2) any compensation or reimbursement received by another person under such sections." 11 U.S.C. § 504(a). The code provides just two exceptions to the general prohibition on sharing compensation: partners and associates of a firm; and attorneys for petitioning creditors in an involuntary case. 11 U.S.C. § 504(b).

The prohibition in section 504 is designed to "preserve the integrity of the bankruptcy process so that professionals engaged in bankruptcy cases attend to their duty as officers of the bankruptcy court, rather than treat their interest in bankruptcy cases as 'matters of traffic.'" 4 *Collier on Bankruptcy* ¶ 504.02[1] (Richard Levin & Henry J. Sommer eds., 16th ed.). Wherever compensation is shared, there exists an incentive to inflate that compensation sought in efforts to increase one's own share. *In re Worldwide Direct, Inc.*, 316 B.R. 637, 645 (Bankr. D. Del. 2004). Indeed, the sharing of compensation creates influences outside of the courts' control, transferring

---

[12] The representation of Moses Tucker is likely a violation of the Florida Rules of Professional Conduct. However, since the Representation Agreement, and the representation of Moses Tucker occurred pre-petition, that is a matter for the attorney disciplinary authorities in the State of Florida. This Court is concerned with the failure to disclose the representation in connection with Rubin & Rubin's retention in this case irrespective of its ethical propriety. While the Court could certainly look to the past unethical conduct of lawyers in deciding whether or not to grant *pro hac vice* admission to this Court, or revoke *pro hac vice* admission when past misconduct is revealed after admission, the Court need not do so here. Rubin & Rubin is being disqualified from representing the Debtors which is the functional equivalent of revoking admission to the bar.

12

from the court "some degree of power over expenditure and allowances." 4 *Collier on Bankruptcy* ¶ 504.01. "The potential for harm makes such arrangements reprehensible as a matter of public policy as well as a violation of the attorney's ethical obligations." *Id.*

The Trustee's argument relies on *In re Winstar Communications, Inc.*, where Judge Carey found that an agreement to share a contingency fee violated section 504. The Court disagrees with the Trustee and finds *Winstar* to be distinguishable. *In re Winstar Communications, Inc.*, 378 B.R. 756 (Bankr. D. Del. 2007). In *Winstar*, special litigation counsel, was entitled to receive a contingency fee for its services through entry of a judgement in the adversary proceeding. *Id.* at 758. The court authorized special litigation counsel to hire a litigation consultant, who was also entitled to a contingency fee in the adversary proceeding. *Id.* at 758-59. Special litigation counsel and consultant requested that the court approve an agreement in which the special litigation professionals would sell their potential contingency fees to an investment bank in an effort described as a "risk mitigating hedge," where the matter was on appeal in the Third Circuit. *Id.* at 759. The US Trustee objected claiming that the agreement violated section 504. *Id.* at 759. The court, while not disagreeing with the special litigation professionals position that the agreement did not appear to offend the policy considerations underlying section 504, held that, "in the absence of ambiguity in the statute, [the court] must apply it as written." *Id.* at 761.

To find a violation of section 504(a), the court must satisfy itself that the statute's three-part test is met: (1) a person must be awarded compensation under section 503(b)(2) or (b)(4); (2) a person shares or agrees to share such compensation; and (3) the person sharing in the compensation does not qualify as one of the two statutory exceptions. Section 503(b)(2) allows an administrative expense claim for compensation awarded under section 330(a), which allows reasonable compensation for actual and necessary services provided by a professional person

employed under Section 327. Section 503(b)(4) allows reasonable compensation for attorneys and accountants of very specific classes of creditors.

Going back to the facts underlying this case, to find a violation under section 504, the Court must find that Rubin & Rubin either shared or agreed to share compensation that was or would have been awarded to Denison under section 330(a) as reasonable compensation for services rendered. That, however, is not what happened here.

The Court's inquiry turns on whether Denison was a professional whose employment required this Court's approval under section 327(a) and whose compensation would, therefore, be paid under section 330(a). The court's analysis in *In re Foundation Grp. Sys., Inc.*, 141 B.R. 196 (Bankr. E.D. Cal. 1992) is instructive on this question. In *In Foundation Grp*., the court was faced with the same question that is before this Court today—whether a professional hired for the purpose of finding a financing source is a professional within the meaning of section 327(a). There, the court made the distinction between a finder and a broker, defining a "finder" as "a person whose employment is limited to bringing the parties together so that they may negotiate their own contract." *Id*. at 198. The court went on to state that the key distinction was whether the professional "has been invested with authority or duties beyond merely bringing the parties together, usually the authority to participate in negotiations." *Id*.

Rubin & Rubin's agreement, both pre- and post-petition, was with Denison and/or Hart Advisors. The relevant part of the agreement outlining the fee sharing specifically references splitting Denison's Commission for finding a financing source. Furthermore, there is nothing in the record that would suggest that Denison was invested with any authority beyond merely bringing in a financing source. As is clear from the record outlined in detail in this Court's Findings of Fact and Conclusions of Law in the Adversary, it was Rubin who was responsible for

negotiating the refinancing terms on behalf of the Debtors. Therefore, the Court must find that Denison was merely a "finder," not a professional under section 327(a) and would not be awarded compensation under section 330(a). Denison's Commission would have been paid, if at all, as an administrative expense claim under section 503(b)(1)(A) as an "actual and necessary cost and expense of preserving the estate."

Without compensation awarded under section 330(a), there cannot be a violation of section 504, even where it appears that a proposed transaction may rise to the level of offending the policy considerations underlying the statute. As Judge Carey observed, "in the absence of ambiguity in the statute, [the court] must apply it as written."

### d. Requirement to Disclose the Fee Splitting Agreement

The fact that Rubin & Rubin was not prohibited from splitting the Denison Commission under section 504, however, does not mean that Rubin & Rubin is out of the woods. By representing the Debtors as special counsel, Rubin & Rubin had an affirmative duty under the Code to notify the Court of its fee splitting arrangement. Section 329 states that:

> Any attorney representing a debtor in a case under this title, or in connection with such case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C. § 329. Section 329 should be read in conjunction with Rule 2016, which specifies the disclosure requirements of section 329(a). A common theme between section 329(a) and Rule 2016 is that both apply to any attorney representing the debtor, without regard to whether such attorney has been retained. Furthermore, this duty applies even if the attorney is being paid by a third party, as opposed to from the estate. 4 *Collier on Bankruptcy* ¶ 329.03. A statement of compensation in accordance with section 329(a) requires that the attorney: (i) disclose all

15

compensation paid or promised to be paid; (ii) indicate whether the payment or agreement was made within a year before the petition date; (iii) list all services rendered or to be rendered in contemplation of or connection with the case; (iv) the source of the compensation; and (v) whether the attorney has shared or agreed to share any compensation with another entity, as well as the details of such agreement. 11 U.S.C. § 329(a); Fed. R. Bankr. P. 2016(b).

Fee disclosure under section 329 is a mandatory obligation, not a permissive one, and continues throughout the case. The purpose of this disclosure is to facilitate the court's examination of compensation pursuant to section 329(b), which allows the court to cancel or modify any such compensation to the extent that it is not reasonable. *See* 11 U.S.C. § 329(b). The failure to disclose is sanctionable and can result in denial of compensation, disgorgement, or revocation of retention. *In re United Companies Fin. Corp.*, 241 B.R. 521, 529 (Bankr. D. Del. 1999) ("[d]enial of compensation is a typical remedy for failure to disclose."); *In re Smitty's Truck Stop, Inc.*, 210 B.R. 844, 848 (B.A.P. 10th Cir.) ("an attorney who fails to comply with the disclosure requirements of section 329 and Rule 2016(b) forfeits any right to receive compensation for services rendered on behalf of the debtor and may be ordered to return fees already received."); *See also In re Universal Bldg. Products,* 486 B.R. at 663. ("[f]ailure to disclose connections itself is enough to warrant disqualification of counsel from employment.").

As attorneys representing the Debtors, Rubin & Rubin had an affirmative duty to disclose the fee sharing arrangement with Denison, even though the payment would not come from the estate. From Rubin's own words, this compensation was for Rubin & Rubin's "participation and assistance in securing the loan." Work done on behalf of the Debtors to close a refinancing transaction is certainly in "contemplation of or in connection with" a Chapter 11 case that was filed to stave off a foreclosure. Rubin & Rubin failed to disclose to the Court, at any point, the fee

16

sharing arrangement with Denison, let alone any of its details. The agreement was not disclosed at the outset of the case or anytime thereafter, nor was it disclosed in August of 2019 when the Court specifically ordered Rubin & Rubin to "update the required disclosures to provide full and accurate information" related to its retention.[13] That directive, without a doubt, included disclosure requirements under section 329.

Rubin & Rubin argues that the Court's analysis should not reach this point because there was no formal written agreement. That argument is untenable. Nothing in the Code or Rules regarding disclosure under section 329 requires that there be a formal written agreement. The applicable provisions refer only to an *agreement* to share compensation. The Code does not define "agreement." An agreement is "a mutual understanding between two or more persons about their relative rights and duties regarding past or future performances; a manifestation of assent by two or more persons." *Black's Law Dictionary* 78 (9th ed. 2009); Restatement (Second) of Contracts § 3 (1981) ("An agreement is a manifestation of mutual assent on the part of two or more persons."). Denison and Rubin & Rubin had a mutual understanding that they would share Denison's Commission in exchange for Rubin & Rubin's assistance in securing the loan, thus, they had an agreement. That fact is undisputed. The Debtors reimbursement of Denison's expenses further evidences the existence of the agreement.

### e. The Fee Splitting Agreement Violates Section 327(e) and the Model Rules of Professional Conduct

The post-petition fee splitting agreement between Denison and Rubin also runs afoul of section 327(e) and the Model Rules of Professional Conduct (the "Model Rules").[14] Section 327(e)

---

[13] *See supra* note 3.
[14] Pursuant to Local Rule 9010-1(f), this Court adopts the Model Rules of Professional Conduct of the American Bar Association.

states that an attorney employed under the section may not hold or represent an interest adverse to

the debtor or the estate with respect to the matter on which the attorney is employed. 11 U.S.C.

327(e). In addition, Model Rule 1.8(a) provides that:

> A lawyer shall not enter into a business transaction with a client or knowingly
> acquire an ownership, possessory, security, or other pecuniary interest adverse to a
> client unless: (1) the transaction and terms on which the lawyer acquires the interest
> are fair and reasonable to the client and are fully disclosed and transmitted in
> writing in a manner that can be reasonably understood by the client; (2) the client
> is advised in writing of the desirability of seeking and is given a reasonable
> opportunity to seek that advice of independent legal counsel on the transaction; and
> (3) the client gives informed consent, in a writing signed by the client, to the
> essential terms of the transaction, including whether the lawyer is representing the
> client in the transaction.

Model Rules of Prof'l Conduct R. 1.8(a). Neither the Code nor the Model Rules define what it

means to have an adverse interest. However, many courts have discussed and adopted the

definition that an adverse interest is "to possess or assert any economic interest that would tend to

lessen the value of the bankruptcy estate or that would create either an actual or potential dispute

in which the estate is a rival claimant" or "to possess a predisposition under circumstances that

render such a bias against the estate." *Kravit, Gass & Wever, S.C. v. Michel (In re Crivello)*, 134

F.3d 831, 835 (7th Cir. 1998); *In re Angelika Films 57th Inc.*, 227 B.R. 29, 38 (Bankr. S.D.N.Y.

1998); *Maiman v. Spizz (In re Ampal-American Israel Corp.)*, 554 B.R. 604, 618 (S.D.N.Y. 2016).

Rubin & Rubin acquired a pecuniary interest adverse to the Debtors through the agreement

to split the Denison Commission. The moment that Rubin agreed to share the commission, he

developed a predisposition that, under the circumstances, created a bias against the estate. That

bias carried with it the potential that he would favor deals that Denison found over other brokers

to the potential detriment of the estate. This bias against the estate was exacerbated by Rubin's

failure to disclose the agreement to the Court, highlighting the Court's concerns that the

circumstances surrounding the agreement are fraught with the potential for fraud.

The issues here are like those in *Fla. Bar v. Doherty*. Fla. Bar v. Doherty, 94 So. 3d 443 (Fla. 2012).  In *Doherty*, the Florida Bar filed a complaint against an attorney, alleging violations of the Rules Regulating the Florida Bar, relevant here is Rule 4-1.8(a).[15] The Florida Bar appointed a referee, who concluded that the attorney violated Rule 4-1.8(a). The attorney maintained a professional relationship with a client providing legal as well as financial services.  To simplify investments, the client asked the attorney to reduce the number of annuities that she owned. The attorney submitted two applications for the purchase of the annuities and stood to receive a commission on both sales had the transactions been completed. The court agreed with the referee and determined that the attorney stood to earn a commission from the transactions and did not disclose that financial interest to the client as required by Rule 4-1.8(a).

Under Model Rule 1.8, an attorney may not obtain a pecuniary interest adverse to the client unless the attorney obtains informed consent in writing and advises the client to seek advice from other counsel. Here, just as in *Doherty*, Rubin neither informed the Debtors of the agreement with Denison nor obtain informed written consent to enter into the agreement. Rubin & Rubin argues that the Representation Agreement contains an informed waiver by the Debtors.  The Court disagrees.  The Representation Agreement does not meet the necessary standards under Model Rule 1.8. The short section in the Representation Agreement to which Rubin & Rubin points neither explains nor mentions the agreement to share the Denison Commission, nor is there any evidence that Rubin advised the Debtors of the desirability of seeking the advice of independent counsel after entering into the agreement with Denison.  Indeed, since the Representation Agreement was entered into before Rubin & Rubin's fee splitting agreement with Denison, such an agreement could not have been in the contemplation of the Debtors when they agreed to Rubin

---

[15] Florida Rule of Professional Conduct 4-1.8 and Model Rule of Professional Conduct 1.8 are nearly identical.

& Rubin's representation. Also, contrary to Rubin & Rubin's position, the Representation Agreement purports to give Rubin & Rubin the sole authority — "at its option" — to enter into agreements with third parties. Clearly, the terms of the engagement agreement are insufficient to satisfy the stringent requirements of Model Rule 1.8 to obtain a knowing waiver.

Furthermore, unlike Model Rule 1.8, section 327(e) provides no basis for obtaining a waiver of its requirements to avoid adverse interests. The Code outright prohibits the employment of attorneys who "represent or hold any interest adverse to the debtor or to the estate." 11 U.S.C. 327(e). Therefore, by entering into the agreement to share the Denison Commission, Rubin & Rubin rendered itself ineligible to serve as special counsel to the Debtors.

## VI.    CONCLUSION

For the reasons stated above, the Court finds that:

1.  Rubin & Rubin failed to disclose the existence of a pre-petition fee sharing agreement with a loan broker as required by Bankruptcy Code section 327 and Bankruptcy Rule 2014;

2.  Rubin & Rubin entered into a post-petition fee sharing agreement with the same loan broker in violation of the Model Rules of Professional Conduct, and failed to disclose the agreement as required by Bankruptcy Code section 329 and Bankruptcy Rule 2016(b);

3.  Rubin & Rubin caused the Debtors to pay the expenses of the loan broker in partial satisfaction of its improper fee sharing agreement;

4.  By entering into the fee sharing agreement, Rubin & Rubin obtained a pecuniary interest adverse to the Debtors in violation of section 327(e) of the Code;

5. By entering into the fee sharing agreement without obtaining explicit written waivers and advising the Debtors they should consult with other counsel, Rubin & Rubin violated its ethical obligations under Model Rule of Professional Conduct 1.8;

6. Rubin and Rubin failed to disclose it pre-petition representation of Moses Tucker, the Debtors property manager and one of the Debtors largest creditors in violation of Bankruptcy Code section 327 and Bankruptcy Rule 2014; and

7. Mark Rubin filed false declarations in connection with Rubin & Rubin's retention in this case stating that Rubin & Rubin did not have any fee sharing agreements, and that it had not represented any of Debtors' creditors.

NOW THEREFORE, the Court will order the disqualification of Rubin & Rubin from acting as counsel to the Debtors; order the disgorgement of all fees and expenses paid or to be paid to Rubin & Rubin in connection with its representation of the Debtors; and order Rubin & Rubin to refund the Debtors for amounts paid to Denison in partial satisfaction of its improper fee sharing agreement in the amount of $11,400.00. Rubin & Rubin will disgorge all fees and expenses already paid to them by Debtors since their retention at 327(e) counsel and reimburse the estate for the improper Denison payment within 30 days from the entry of this order.

SO ORDERED.

Dated: September 4, 2020

_____
JOHN T. DORSEY, U.S.B.J.