**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| NNN 400 CAPITAL CENTER 16, LLC, *et al.*, ) | Case No. 16-12728 (JTD) |
| ) | (Jointly Administered) |
| Debtor(s). ) | |
| ) | **Re: D.I. Nos. 621, 622** |
| NNN 400 CAPITAL CENTER, LLC, *et al.*, ) | |
| ) | |
| Plaintiff(s), ) | Adv. Proc. No. 18-50384 (JTD) |
| v. ) | |
| ) | |
| WELLS FARGO BANK, N.A., *et al.*, ) | **Re:  Adv. D.I. 800** |
| ) | |
| Defendant(s). ) | |

**<u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>**

Following trial, Wells Fargo Bank, N.A. ("<u>Prior Lender</u>") and Little Rock-400 West Capitol Trust ("<u>Secured Lender</u>") (collectively the "<u>Lender Defendants</u>") filed a Rule 7054 Motion for Attorneys' Fees and Expenses Pursuant to the Loan Agreement and, in the Alternative, in Support of Taxable Costs (D.I. 622, Adv. D.I. 800) (the "<u>Motion</u>").  The Court having considered the Motion, the parties' briefs, and the declarations and exhibits filed in support makes the following findings of fact and conclusions of law.

### **<u>INTRODUCTION</u>**

Simultaneously with the filing of this Motion, the Lender Defendants also filed a Motion pursuant to Federal Rule of Bankruptcy Procedure 7052 (the "Rule 7052 Motion") seeking clarification of the Court's Post-Trial Findings of Fact and Conclusions of Law regarding Lender Defendants' claim for reasonable fees and expenses alleged in their Proof of Claim ("POC"). The Debtors' objections to Lender Defendants' POC were tried simultaneously with the

Adversary Proceeding by stipulation of the parties. Following trial, the Court sustained Debtors' Objection to the reasonableness of the fees and expenses claimed by the Lender Defendants. In response to the Rule 7052 Motion, the Court reiterated its conclusion that because Lender Defendants did not present any evidence at trial to show the reasonableness (or even the basis) for the fees asserted in the POC, they were not recoverable. See Findings of Fact and Conclusions of Law, D.I. 602, Adv. D.I. 785, at 35-36.

The fees and costs sought in the POC relate to the Lender Defendants' actions in enforcing the Loan Agreement. So, for example, any fees and costs incurred by the Lender Defendants in connection with prepetition attempts to foreclose on their collateral or protecting their rights in the bankruptcy proceeding are not allowed because Lender Defendants failed to prove the reasonableness of those fees and costs at trial. Significantly, the POC was filed approximately a year before the Debtors filed the Adversary.

Rule 7054, on the other hand, provides a separate basis for awarding fees and costs to a prevailing party in an adversary proceeding. Specifically, Federal Rule of Civil Procedure 54(d)(2)(A), made applicable to bankruptcy proceedings by Rule 7054 provides as follows:

> A claim for attorney's fees and related non-taxable expenses must be made by motion unless the substantive law requires those fees be proved at trial as an element of damages.

Fed. R. Civ. Proc. 54(d)(2)(A). The question then becomes, what types of fees require proof at trial? The Advisory Committee Notes to Rule 7054 provide some guidance. "When sought under the terms of a contract providing for the recovery of the fees incurred <u>prior to the instant adversary proceeding</u>" fees typically are required to be claimed in a pleading. Advisory Committee Note (2014) (emphasis added). Thus, fees and costs incurred after commencement of an adversary are recoverable by motion after entry of a judgment. *See, e.g., Rissman v. Rissman*,

229 F.3d 586, 588 (7th Cir. 2000) ("Fees for work done during the case should be sought after decision, when the prevailing party has been identified and it is possible to quantify the award."); *Richardson v. Wells Fargo Bank, N.A.*, 740 F.3d 1035, 1039 (5th Cir. 2014) ("The language of the contract and the nature of the claim are the dispositive factors concerning whether the fees are an element of damages or collateral litigation costs.").

Here, the Court denied Lender Defendants' fees and costs sought under the POC as fees and costs that would have required proof at trial. That does not preclude Lender Defendants from seeking fees and costs pursuant to Rule 7054 incurred in successfully defending the Adversary Proceeding.

## I. FINDINGS OF FACT

### A. Procedural Background

In 2006, The Plaintiffs and the Lender Defendants and their predecessors entered into a Loan Agreement which provides in pertinent part that "Borrower covenants and agrees to pay. . . . all reasonable costs and expenses (including reasonable, actual attorneys' fees and disbursements . . . reasonably incurred by Lender in accordance with this Agreement in connection with (g) . . . the prosecuting or defending of any action or proceeding or other litigation, in each case against, under or affecting Borrower, this Agreement, the other Loan Documents, the Property, or any other security given for the Loan; . . ." (Loan Agreement, D.I. 1, Ex. C, § 17.5). The Plaintiffs filed for bankruptcy on December 9, 2016. On April 13, 2018, Plaintiffs commenced this Adversary Proceeding asserting various claims arising out of Lender Defendants' performance under the Loan Agreement. (D.I. 1). Following a trial in December 2019, the Court issued Findings of Fact and Conclusions of Law and a corresponding judgment

entering final judgment in Defendants' favor on all claims asserted in the Adversary. (D.I. 602, 603, Adv. D.I. 785, 786.).  The Lender Defendants subsequently filed this Motion.

### B. Lender Defendants' Legal Defense

The Complaint asserted ten counts against Lender Defendants: (1) Breach of Contract against Prior Lender (Count I); (2) Negligence against Prior Lender, LNR, and Berkadia (Count II); (3) Tortious Interference against Prior Lender, LNR, and Berkadia (Count III); (4) Aiding and Abetting Tortious Interference against Berkadia and LNR (Count IV); (5) Declaratory Judgment against Secured Lender (Count V); (6) Unjust Enrichment against Secured Lender and Taconic (Count VII); (7) Breach of Master Confidentiality Agreement against Taconic (Count VIII); (8) Breach of Contract against Secured Lender (Count IX); and (9) Tortious Interference against Secured Lender and Taconic (Count X).  (See D.I. 1).[1]  Plaintiffs amended their Complaint twice (see First Amended Complaint at D.I. 24 and Second Amended Complaint at D.I. 268), ultimately removing Count X, but proceeding with Counts I-IX.

Plaintiff's allegations covered events spanning approximately four years concerning various aspects of the Lender Defendants' performance under the parties Loan Agreement, including Lender Defendants' review and approval of several leases, their review of multiple requests for reimbursements, their alleged interference with prospective tenants, their handling of requests for payoff statements, their alleged refusal to make disbursements and attempt to starve the property of operating cash, their alleged improper requests to obtain information from Plaintiffs, their alleged improper inclusion of late fees on a payoff statement, their alleged interference with prospective refinancing lenders, their alleged violation of industry standards

---

[1] Count VI of the Complaint was only against Somera Road, Inc., not the Lender Defendants.

relating to commercial loans, and their alleged violation of common law duties to Plaintiffs. (Second Amended Complaint, D.I. 268)

To defend against these claims, the Lender Defendants hired the firm of Duane Morris LLP. (Declaration of Paul E. Chronis, D.I. 622, Adv. D.I. 800-2). The team of attorneys representing Lender Defendants included four partners who, combined, have decades of experience in business reorganization, creditors' rights, and bankruptcy, four associates with varying levels of experience in the area of commercial litigation and creditors' rights, and two experienced litigation paralegals. (Chronis Dec. ¶ 4, Murarova Decl. Ex. 1, D.I. 622, Adv. 800). The partners on the case billed the Lender Defendants at hourly rates ranging from $645 to $850, a reduction from their standard $710-$1120 rates. (Leary Decl. ¶5, D.I. 622, Adv. D.I. 800). The associates billed at hourly rates ranging from $345-$550, a reduction from their standard rates of $380-$765 per hour, and the paralegals were billed at $350-$395 per hour, discounted from their standard $385-$435. (*Id.*) These rates are typical of those charged by firms of a similar size and ability located in the same geographic region. (Leary Decl. ¶6, D.I. 622, Adv. D.I. 800). The work assigned to each attorney was commensurate with their level of experience and, where appropriate, tasks were assigned to attorneys or paralegals with lower billable rates. (Chronis Decl. ¶ 7, D.I. 622, Adv. D.I. 800).

In connection with their defense of Plaintiffs' claims, from the inception of the Adversary Proceeding through June 30, 2020, the attorneys and paralegals billed for tasks such as:

(a) Prepare for and appear in person or via the telephone for status conferences before the Court.

(b) Prepare for and appear at formal and informal conferences with Plaintiffs' counsel and counsel for Somera Road, Inc. concerning litigation topics such as discovery, briefing schedules, stipulations, substantive case issues, settlement, case management deadlines, court appearances, deposition logistics, etc.

(c) Prepare for and conduct client interviews concerning Plaintiffs' claims.

(d) Prepare for and conduct client calls, and regularly draft detailed client updates to provide litigation reports, analyses, and litigation counseling.

(e) Analyze case law, file, and other materials to develop and refine theories and defenses.

(f) Research for and draft a motion to dismiss Plaintiffs' original and first amended complaints.

(g) Research for and draft answers to complaints and affirmative defenses.

(h) Research for, draft, and propound written discovery requests on the Plaintiffs and other third-parties.

(i) Research for, draft, and work with clients on preparing written discovery responses to interrogatories.

(j) Research for, draft, and work with clients on preparing written discovery responses to document requests, which sought documents covering a multi-year time-period.

(k) Analyze opposing parties' privilege logs to determine propriety of privilege objections and identify and develop necessary action items based on same.

(l) Manage the collection, review, and production of approximately 40,000 pages of documents on Lender Defendants' behalf.

(m) Analyze Lender Defendants' privileged documents and prepare appropriate privilege logs.

(n) Analyze tens of thousands of pages of documents produced by Lender Defendants to continue assessment and development of case theories and defenses.

(o) Analyze tens of thousands of pages of documents produced by Plaintiffs.

(p) Analyze tens of thousands of pages of documents produced by third parties.

(q) Prepare for and engage in discovery mediation process which involved, among other things: (i) numerous meet-and-confer discussions with opposing counsel; (ii) in-person and telephonic conferences with the discovery mediator; (iii) travel to take deposition in aid of discovery; and (iv) research for and briefing of dozens of discovery issues.

(r) Research for and draft a detailed motion and brief seeking a Court order on various discovery issues.

(s) Prepare for and appear at hearings before the Court on numerous substantive matters.

(t) Analyze file and prepare for client depositions including by identifying key exhibits, reviewing exhibits with clients, and conducting preparation sessions.

(u) Defend Defendants during their depositions.

(v) Conduct detailed review of case file to prepare for and depose Plaintiffs' 30(b)(6) representative.

(w) Conduct detailed review of case file to prepare for and take eight third-party depositions.

(x) Research and draft summary judgment briefing and voluminous supporting materials on an expedited basis.

(y) Research for and manage process of affirmative and rebuttal expert discovery, including interview and retention of experts and preparation of report.

(z) Prepare for, take, and defend expert depositions

(aa) Engage in trial preparation activities including but not limited to: (i) Identification, review, and preparation of exhibits (a total of 1,728 joint trial exhibits) and related materials (i.e., exhibits lists) and numerous conferences with all counsel regarding same. (ii) Develop trial themes and strategies. (iii) Draft witness outlines. (iv) Draft openings and closings. (v) Draft and prepare for argument on Daubert motions. (vi) Draft and prepare for argument on summary judgment motions. (vii) Prepare for and appear at the pre-trial conference.

(bb) Engage in all necessary trial activities including but not limited to: (i) Appearing at six full trial days in court. (ii) Preparing and eliciting testimony from witnesses. (iii) Analyzing and engaging in the processes necessary to admit exhibits during trial. (iv) Working on trial strategy. (v) Engaging in settlement discussions during trial.

(cc) Engage in all necessary post-trial activities including but not limited to: (i) Pursuing post-trial written discovery relating to issues that arose during the trial. (ii) Preparing for and appearing at Seth Denison trial deposition. (iii) Analyzing and preparing deposition designations and counter-designations. (iv) Analyzing and drafting the materials necessary to obtain the admission of additional exhibits and to review and prepare objections to Plaintiffs' proposed additional trial

>exhibits. (v) Analyzing all evidence admitted at trial (whether during live testimony or in the post-trial process) for the purpose of preparing post-trial written submissions. (vi) Drafting proposed findings of fact and conclusions of law. (vii) Researching for and drafting a directed judgment motion. (viii) Analyzing Plaintiffs' proposed findings of fact and conclusions of law. (ix) Researching for and drafting motion to strike portions of the Plaintiffs' proposed findings of fact/conclusions of law.

(See Chronis Decl., Ex. 1, D.I. 622, Adv. D.I. 800). Fees for work related to the Adversary Proceeding total $4,029,608.67.[2] (Motion, D.I. 622, Adv. D.I. 800 at ¶15; Chronis Decl.; Murarova Decl).

In connection with the Adversary Proceeding, Lender Defendants also incurred taxable costs including fees of the clerk in the amount of $2,103.25, transcript fees in the amount of $62,204.76, deposition costs in the amount of $2,071.45, witness fees in the amount of $80, exemplification costs for exhibits necessarily attached to a document required to be filed in the amount of $795.32, and exemplification costs for copies necessarily obtained for the case in the amount of $27,201.66. (Murarova Decl.¶8, D.I. 622, Adv. D.I. 800). These expenses total $94,455.84.[3]

## II. CONCLUSIONS OF LAW

### A. Attorney's Fees and Expenses

---

[2] Lender Defendants request a total of $4,292,842.67 (D.I. 622, Adv. D.I. 800 at ¶15). However, as noted by Lender Defendants, of that amount, $263,234.00 related to the United States Trustee's 2020 disqualification motion. (Motion, D.I. 622, Adv. 800, at n.7). The Court does not consider the 2020 disqualification motion to be related to the Lender Defendants' defense of claims filed in the Adversary Proceeding and has therefore subtracted that amount from the requested total, to arrive at $4,029,608.67. The fee total also does not include the $177,885.50 in fees previously requested in connection with the 2019 disqualification proceedings (D.I. 254) or fees attributable to the confidentiality agreement claim that Plaintiffs asserted only against Taconic, estimated by Lender Defendants to equal $536,605.33. (Murarova Decl ¶6, D.I. 622, Adv. D.I. 800) (stating these amounts had been deducted from the Lender Defendants' requested fee amount).

[3] Lender Defendants also request an award for expenses in the amount of $326,066.20. However, the expenses listed are not just those that relate to the Adversary Proceeding, but all expenses incurred from April 1, 2018 through June 30, 2020. (D.I. 622, Adv. D.I. 800 at note 8). Because the additional expenses submitted to the Court do not distinguish between the Adversary and the bankruptcy, they will not be considered.

Federal Rule of Civil Procedure 54, made applicable to these proceedings by Bankruptcy Rule 7054, provides that the Court may award attorney's fees and related nontaxable expenses upon a timely filed motion that (i) "specif[ies] the judgment and the statute, rule, or other grounds entitling the movant to the award"; (ii) state[s] the amount sought or provide[s] a fair estimate of it"; and (iii) disclose[s], if the court so orders, the terms of any agreement about fees for the services for which the claim is made."  Fed. R. Civ. Proc. 54(d)(2); Fed. R. Bankr. Proc. 7054(b)(2).

As discussed above, the Motion sets forth Section 17.5 of the Loan Agreement as the grounds entitling the Lender Defendants to the award. (D.I. 622, Adv. D.I. 800 at ¶18).  The fees sought by the Lender Defendants fall within the scope of this provision because, as discussed above, they relate to the adversary proceeding, in which the Lender Defendants had to defend their performance under the Loan Agreement.

The Loan Agreement is governed by Arkansas Law (Loan Agreement ¶ 19.1). Accordingly, the Court must apply Arkansas law in determining the reasonableness of Lender Defendants' requested fees and expenses.  Arkansas courts consider the following factors in determining whether fees are reasonable: "(1) the experience and ability of the attorney; (2) the time and labor required to perform the service properly; (3) the amount in controversy and the result obtained in the case; (4) the novelty and difficulty of the issues involved; (5) the fee customarily charged for similar services in the local area; (6) whether the fee is fixed or contingent; (7) the time limitations imposed upon the client in the circumstances; and (8) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the attorney." *Scroggin v. Credit Bureau of Jonesboro, Inc.*, 973 F. Supp. 2d 961, 981–82 (E.D. Ark. 2013).  However, "there is no fixed formula in determining

the reasonableness of an award of attorney's fees," and "when a trial judge is familiar with the case and the services performed, the fixing of a fee is within the discretion of the court even in the absence of proof of the nature and extent of the attorney's services." *Id.*

Having considered the fee request in light of these factors, the Court concludes that the Lender Defendants' requested attorney's fees are reasonable.[4] As discussed above, the attorneys assigned to work on the adversary proceeding were experienced in the relevant areas of the law and the work was appropriately distributed among senior and junior members of the team, with the most senior (and highest billed) attorneys working as needed. The time and service put forth to defend the adversary proceeding is what would be expected for a matter of this size, especially considering the amount in controversy, the complexity of the issues involved, the large number of parties and third parties, expansive discovery, a lengthy trial, and post-trial process. That the Lender Defendants were ultimately successful in defending against the claims suggests that the time was well spent. The law firm's hourly billable rates are consistent and competitive with the billable rates of other firms practicing before this Court as well as other firms of similar size and experience. The law firm also provided Lender Defendants with discounted rates and wrote off a portion of fees owed. The fees in question were not fixed or contingent. Given the relatively compressed litigation schedule, the time spent by counsel to defend against the matter was appropriate and necessary and given the scope of the matter and the number of attorneys involved, likely precluded the law firm from originating or handling other billable matters.

---

[4] The Plaintiffs do not contest the reasonableness of the fees and expenses requested but rather argue that the reasonableness of <u>all</u> of the fees sought by the Lender Defendants was already litigated at the December 2019 trial. See Debtors' Response (D.I. 813). As discussed above and as set forth in the Court's Memorandum Order on the Rule 7052 Motion, dated October 21, 2020, the fees that were litigated during the trial were those connected to the Lender Defendants' Proof of Claim.

Having concluded that the fees sought are reasonable, the Court now turns to the issue of whether the specific amount requested was incurred in connection with the litigation about the Loan Agreement. As noted above, the fees requested by Lender Defendants include only those that relate to the Adversary Proceeding, apart from their inclusion of fees in connection to the 2020 disqualification proceedings, which the Court has deducted. This brings the total fees actually and reasonably incurred in connection with the Adversary Proceeding to $4,029,608.67.

With respect to expenses, while the Lender Defendants indicate in their papers that they were careful to ensure that the fees requested related only to the Adversary Proceeding, they also noted that the expenses sought include those incurred from April 1, 2018 through June 30, 2020 whether related to the Adversary Proceeding or not. (D.I. 622, Adv. D.I. 800 at note 8). As with fees, expenses that were incurred with respect to the Claim Objection are not properly awarded under this Motion. Because the Court is not able to discern from the Secured Lenders' papers which expenses were actually and reasonably incurred solely in connection with the Adversary Proceeding, the Secured Lenders' request for expenses is denied.

### B. Taxable Costs

In addition to seeking fees and expenses pursuant to Rule 7054(d)(2), Lender Defendants alternatively seek an award for their taxable costs pursuant to Rule 7054(d)(1)), 28 U.S.C. §§ 1920 and 1921, and District of Delaware Local Rule 54.1. (Motion at ¶27). Federal Rule of Bankruptcy Procedure 7054 provides that "[t]he court <u>may</u> allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides." Fed. R. Bankr. Proc. 7054(b)(1) (emphasis added). The language of the Bankruptcy Rule is more permissive than its counterpart in the Federal Rules of Civil Procedure, which states "[u]nless a federal statute, these rules, or a court order provides otherwise, costs . . . <u>should be allowed</u> to the

prevailing party." Fed. R. Civ. Proc. 54(d)(1) (emphasis added).[5]  "Thus, there is no presumption created in favor of awarding costs under Bankruptcy Rule 7054(b)."  10 *Collier on Bankruptcy* P 7054.05 (16th 2020) (citing *In re Clansy*, 2008 Bankr. LEXIS 3700 at *7-9 (Bankr. S.D. Tex. Jan. 18, 2008 ) (citing cases noting the distinction between the bankruptcy and civil standards and "declin[ing] to read the presumption created by Civil Rule 54(d) into Bankruptcy Rule 7054(b) when Congress explicitly chose not to incorporate it.").  The decision to award costs is therefore within the sound discretion of the Court.

Sections 1920 and 1921 of Title 28 of the United States Code set forth the types of costs allowable, which include fees of the clerk and marshal, fees for transcripts necessarily obtained for use in the case, fees for disbursements for printing and witnesses, fees for exemplification and costs of making copies necessarily obtained for use in the case, docket fees under Section 1923 and compensation of court appointed experts, interpreters, and related services.  28 U.S.C. §§ 1920, 1921.  "The prevailing party bears the initial burden of establishing that each specifically documented cost that it seeks falls within the itemized list of permissible costs in [the Code] and persuading the Court that the costs were reasonably necessary to the litigation." *In re Clansy*, 2008 Bankr. LEXIS 3700 at *10.  "After the prevailing party meets its burden, the burden of persuasion shifts to the opposing party, to show that costs should not be allowed under the circumstances." *Id.* citing *D & B Countryside, L.L.C. v. Newell*, 217 B.R. 72, 75 (Bankr. E.D. Va. Feb. 9, 1998).

---

[5] The difference in phrasing is one with a distinction from the perspective of the clerk of court, who will typically enter a bill of costs filed pursuant to Rule 54 without a judgment from the court, but may not do so for a bill of costs filed pursuant to Rule 7054.  *See* Bankruptcy Form B2630 Instructions, Applicable Rules and Law ¶ 4  *available at* http://www.uscourts.gov/forms/bankruptcy-forms/bill-costs ("The clerk will not tax costs unless the judgment signed by the court specifically awards costs to the prevailing party. Rule 7054(b).  The Bankruptcy Rule is different from Fed. R. Civ. P. 54(d), where costs are allowed unless the court orders otherwise.").

As discussed above, the Lender Defendants prevailed on all claims asserted in the Adversary Proceeding. Having reviewed the list of costs and accompanying descriptions submitted by Lender Defendants, the Court concludes that the costs sought are of the type allowable. They also relate solely to the Adversary Proceeding. Although the Plaintiffs argue that the Court should deny the request for costs on the grounds that they did not act in bad faith in pursuing the Claim Objection and Adversary Proceeding (D.I. 637, Adv. D.I. 813 at 9), the Court is not persuaded that costs should not be allowed under the circumstances of this case. Accordingly, taxable costs in the amount of $94,455.84 are awarded.

### III.     CONCLUSION

The parties having consented to a final order of this Court, it is ordered, adjudged, and decreed that, for the reasons stated herein, the Secured Lenders are awarded fees in the amount of $4,029,608.67 and their request for expenses is denied. The Secured Lenders' request for alternative relief in the form of taxable costs is granted in the amount of $94,455.84.

The Court will enter a judgment and order consistent with this opinion.

Dated: October 21, 2020

JOHN T. DORSEY, U.S.B.J.